In the Matter of the Estate of JOHN E. EUSTIS, Deceased.

Surrogate's Court, Bronx County, June 3, 1931.

*Elmer T. Eustis* [*Francis R. Holmes* of counsel], for the executors.

*Hancock, Dorr, Kingsley & Shove*, for Richard C. Eustis, individually, and Edwin M. Eustis.

*Arthur C. Hume*, for John R. Eustis and others.

*Harold Dudley Greeley*, for Mary Eustis, individually.

*Francis B. Upham, Jr.*, for Central Hanover Bank and Trust Company, as trustee under deed of trust.

*William A. Walsh*, special guardian.

HENDERSON, S. This is an application by the executors upon their accounting for a construction of the will of the decedent. The question for consideration is the present status and ownership of a trust fund of approximately $700,000 in a living trust created under a written agreement by the testator, his wife, Permelia A. Eustis, and the Central Union Trust Company. The executors wish to have a judicial determination as to whether this fund became the absolute property of Mrs. Eustis upon the death of her husband, whether it became part of his residuary estate or whether, as to such property, the decedent died intestate.

The living trust agreement was made on April 28, 1926. The date of the decedent's will is July 26, 1928. The testator died June 21, 1929, and predeceased his wife, who died August 21, 1930. He was survived by eight children, six of whom were the issue of a prior marriage, and two the issue of his marriage with Permelia A. Eustis.

The decedent left an estate in excess of $2,500,000, which sum includes the property from the living trust deed. He was an able lawyer of long experience. The language of the living trust agreement and of the will is clear and unambiguous. Paragraph " fifth " of the living trust agreement is as follows:

" *Fifth.* John E. Eustis, one of the transferrors, reserves the right at any time to revoke the trust herein created and cause the stock to be transferred as he may desire or to be sold. It being understood that so long as this trust exists that this is a joint account and should the same be alive at the time of the death of John E. Eustis then and thereafter all of the net dividends and income received therefrom shall be paid to Permelia A. Eustis the other transferror, during the term of her natural life and at her death the same to be treated and become a part of the Estate of

John E. Eustis, one of the transferrors, and to be disposed of in accordance with the terms of his Last Will and Testament."

By the language above quoted, John E. Eustis retained the right to revoke the trust at any time during his life. This right was not exercised by him. Whether or not Permelia A. Eustis received the principal of the living trust by survivorship under the trust agreement, as is contended by one of the parties to this proceeding, must be determined by an examination of the agreement itself. It fixes the rights of the parties to the agreement and by its terms gives to Permelia A. Eustis a life estate upon the death of the decedent, with remainder to his estate. His executors are, therefore, entitled to its possession as an asset of his estate.

The question then arises as to whether or not the testator disposed of this property by his will. The will, in paragraph " fourth," contains a broad general residuary clause. Paragraph " fourteenth " refers to the property which was the subject of the living trust agreement and reads as follows:

" *Fourteenth*. The reason I have not make a larger provision for my wife in this Last Will and Testament is that I have made adequate provision for her in my lifetime by placing a large block of securities in our joint names in the Babcock & Wilcox Co., Ltd., of London, England, and recently trusteed in Central Union Trust Company of New York, 80 Broadway, New York City, which becomes her property absolutely at my death, and also having transferred to her other securities. Together these amount to about one-third of my whole estate which she has assured me will be acceptable to her, and that she will make no claim for any dower or any right of dower in any of my real estate."

The property trusteed with the Central Union Trust Company together with other property owned by Permelia A. Eustis at the time of her death approximates one-third of the estate of the decedent. It is urged that the 14th paragraph of the will discloses an intention on the part of the testator to give the corpus of the living trust to his wife and that necessary words of bequest should be supplied to effectuate the intention of the testator. Words may sometimes be supplied to carry out the decedent's clear intent when it is apparent and ascertainable from the context of the will. (*Matter of Vowers*, 113 N. Y. 569, 571; *Eidt* v. *Eidt*, 203 id. 325.) That is not the case here presented. The testator was neither unskillful nor inaccurate in the use of the language in paragraph " fourteenth." He clearly states that he has made adequate provision for his wife in his lifetime by reason of the property trusteed in the Central Union Trust Company and the transfer of other securities. He states that the trusteed property

becomes his wife's absolutely upon his death. This does not evince an intention to make a present gift to his wife but is an explanation as to why he has not done so. If I am correct in my conclusion that the widow received only a life estate in the trusteed property, the testator was mistaken in his conclusion that it became hers absolutely upon his death. This mistake may explain why no bequest of this property was made to her in the will. It may indicate that he desired her to have it absolutely but it does not show an intention to give it to her in his will.

One question remains: Did the property involved in the living trust become part of his residuary estate and pass under his will or did he die intestate as to it?

The intention of a testator to include every interest and estate not otherwise legally devised or bequeathed, within a general residuary clause, may be presumed. Such presumption, however, may be overcome when, by the language used in other parts of the will, it is clearly manifest that he did not so intend. There is no rule of law which prevents a testator from restricting the operation of the residuary clause. The actual intention of the testator must be followed if it can be ascertained from his language. (*Lamb* v. *Lamb*, 131 N. Y. 227, 234; *Floyd* v. *Carow*, 88 id. 560, 568; *Riker* v. *Cornwell*, 113 id. 115, 127; *Morton* v. *Woodbury*, 153 id. 243, 253; *Matter of Disney*, 190 id. 128, 131.)

This testamentary intention and his thought at the time of the execution of the will are definitely expressed in the instrument itself. He believed, though erroneously, that he had given his wife the property embraced in the living trust absolutely under the terms of that agreement. His language is clear and from it no inference can be drawn of an intention to include the trust agreement property in his residuary estate. In legal effect and from the very language of his will, the testator indicates that this property is excluded from the dispositive effect of his residuary clause.

Canons of construction are rules to aid in ascertaining intention which would otherwise remain in legal doubt and obscurity. They are not an excuse for finding some possible testamentary intention contrary to the express language of the will. (*Matter of Buechner*, 226 N. Y. 440, 444; *Matter of Rooker*, 248 id 361, 364; *Matter of Disney, supra.*) If the inference were here drawn that the property in question is part of his residuary estate, the testator's wife would be deprived of one-third of the trust agreement property, all of which he considered belonged to her, and his children would receive no testamentary benefit other than the income from the trusts created in the residuary clause. This is clearly contrary to his entire testamentary plan, as is further demonstrated by the pro-

visions of his wife's will. Her will was submitted without objection. It is dated May 5, 1929, and was drawn by the decedent. This was almost a year after his own will. A reading of her will shows that he believed that the living trust property became hers absolutely upon his death. That property would be divided equally and absolutely among his children under the terms of her will. It is the duty of the court to construe and interpret a will, not to construct and make a new one. (*Matter of Tamargo*, 220 N. Y. 225, 231.) The testator's intention, as expressed in his will, was not to include the trust agreement property in the residuary clause of his will, as he believed he had already disposed of it. I hold that he did not make any testamentary disposition thereof and the same passes as in intestacy.

Settle decision and decree on the construction accordingly.