In the Matter of the Estate of JOHN L. CURLEY, Deceased.

Surrogate's Court, Kings County, May 26, 1934.

*Jacob L. Holtzmann* [*Vincent T. Follmar* of counsel], for the petitioner.

*Foley & Martin* [*Patrick J. Dobson* and *Maurice A. Krissel* of counsel], for the executor, respondent.

*Walter Jeffreys Carlin*, special guardian.

*Edward L. Kelly* for St. Mary's Roman Catholic Church of Jersey City, respondent.

*Cassidy & Cassidy* [*Mortimer M. Cassidy* of counsel], for St. Matthew Roman Catholic Church.

*Thomas J. Armstrong*, for Hugh Curley and others.

WINGATE, S.   The present proceeding, initiated by a widow under section 145-a of the Surrogate's Court Act for a determination of her rights to elect against the provisions of the will of her late husband, presents a number of novel questions respecting this recently acquired right of a surviving spouse.   Testator was survived by the widow but by no children or parent, so that if he had died intestate, her distributive rights in the estate would have been $10,000 plus one-half.   (Dec. Est. Law, § 83, subd. 4.)

The will, which in some respects is a rather remarkable document, is dated May 1, 1933, and was admitted to probate by this court on March 10, 1934.   In its " second " item testator purported to devise and bequeath to the widow the family residence in Brooklyn, " together with my automobiles and all household furniture, and all automobile accessories, appliances, etc."

It may be noted in passing that the real property was conveyed to the decedent and the widow, as his wife, by deed dated July 3, 1917.   His only automobile is stated to have been a 1929 Packard sedan of the value of $400, and the widow asserts that the household furniture was hers, and did not exceed $1,000 in value in any event.

The succeeding item of the will reads:

" *Third.* If my said wife survive me, I direct my Executor to set apart from the net amount of my estate remaining after the devise in Paragraph Second of this Will, a part or principal fund of my estate which added to the value of the said premises 150 80th Street, Borough of Brooklyn, City of New York shall constitute one-half the net value of my estate; and I give, devise and bequeath such part so set apart, to my executor hereinafter named, in trust to invest and reinvest, collect the rents, income and profits thereof and to pay the income therefrom to my wife, Grace S. Curley during the term of her life, and on her death the principal of such fund shall revert to the corpus of my estate."

The next four items of the will give general legacies aggregating $116,000, and the eighth reads: "The provisions made in this Will for my wife are in lieu of dower, and any and all other rights in and to my estate." The residue is given to certain designated nieces and nephews of the testator.

Items eleventh to fourteenth, inclusive, appoint the executor and purport to grant him substantially uncontrolled and unlimited discretion and immunities in his conduct of the affairs of the estate. Since these directions form the basis of one of the arguments in favor of the right of the wife to take as upon intestacy, some of their provisions deserve mention. The fiduciary is granted the power to name his successor and both he and such successor are relieved from the giving of any bond. He is granted full authority to sell any property of the estate, other than that embraced in the second item, at such times, on such terms and for such prices as he shall see fit. He is not limited to legal investments and is authorized to continue to hold, sell, exchange or convert any securities found in the estate at testator's death. The instrument further purports to exonerate him from liability "for any act of omission or loss in the performance of his duties except for wilful neglect or misconduct." He is authorized to distribute or allot assets of the estate in kind, and it is provided that his judgment "concerning the propriety thereof and the relative values, for the purpose of distribution * * * shall be binding and conclusive on all persons interested in my estate."

The "fifteenth" item is an in terrorem provision which appears wholly worthless. Since, however, this question is not in issue, no determination is made in respect to it.

The contentions of the widow are that the testator, by reason of the inclusion in the gift to her of property to which she has individual, legal title, has not complied with the provisions of section 18 of the Decedent Estate Law, awarding her one-half of the estate and that, in consequence, she possesses a right of election against the will. Further, that the trust erected by the will for her benefit is not the sort of trust contemplated by the various subdivisions of the section, wherefore she is entitled to take such one-half of the estate outright.

The extreme opposite contention is advanced by the executor, who maintains that the widow is strictly limited to the terms of the will and that she must, in order to receive any benefit from the estate whatsoever, contribute her own property, of which testator has purported to dispose in item "second," to the assets of the estate.

As a preliminary to the consideration of the questions here involved, it will be wise to recall the conditions prevailing prior

to the enactment of section 18 and the remedies which this legislation sought to effectuate. These are conveniently summarized in the original report of the Commission to Investigate Defects in the Laws of Estates, which formed the basis for this legislation (Leg. Doc. 1930, No. 69, pp. 86, 87), and which, being before the Legislature at the time of the passage of the law, is properly to be considered in its interpretation. (*People* v. *Schweinler Press*, 214 N. Y. 395, 404; *Matter of Greenberg*, 141 Misc. 874, 882; affd., 236 App. Div. 733; affd., 261 N. Y. 474; *Matter of Mihlman*, 140 Misc. 535, 536, 537; *Matter of Meyer*, 148 id. 901, 902; *Matter of Sitkin*, 151 id. 448.)

This report, upon which the Legislature acted in this connection, reads in part as follows: " There is a glaring inconsistency in our law which compels a man to support his wife during his lifetime and permits him to leave her practically penniless at his death   *   *   *. The unlimited power conferred upon the maker of a will by our New York law of liberty of bequest is absolutely at variance with the legal liability of an unnatural father or a neglectful husband in his lifetime. Under our humanitarian laws, he may be compelled during his life by criminal proceedings or civil process to contribute to the support of a wife or minor children. Death frees his property from this liability and he may do with it what he pleases by a valid will.   *   *   *   In line with the progressive policy of modern legislation, and in place of dower, the Commission recommends that there be substituted the right of the widow to take her intestate share against the provisions of the will. Thus disinheritance or unfair discrimination will be avoided. We do not propose to go as far as Pennsylvania did, because that Commonwealth permits the surviving spouse to elect to take the entire intestate share *outright* as against the terms of the will. It does not seem to the Commission to be desirable that the right to take the intestate share should be given to the surviving spouse in every estate, regardless of its amount. But while immediate necessities should be provided for, there should be some limitation by way of permitting the income only upon the balance of the intestate share to be paid over during the life of the surviving spouse.   *   *   * Opportunity is thus preserved to the husband to relieve the wife of the burden of investment and care of her portion of the avails of his estate by placing such excess amount in the form of a trust, and he is also able to safeguard the principal of her share against a spendthrift wife." (Leg. Doc. 1930, No. 69, pp. 86–88.)

From this statement the following propositions are deducible:

1. The laws of New York existing prior to the enactment in question permitted the " glaring " inequity of allowing " a neglectful

husband," by death, to escape from his previous obligation to support his wife.

2. This defect in the law is to be remedied by permitting the widow to take her intestate share in the estate against the provisions of the will.

3. The manner in which she is thus to receive her intestate share shall differ from that in vogue in Pennsylvania where she becomes entitled to receive it outright in all cases.

4. She is to receive it

A. By a certain sum outright, which shall be sufficient to provide for immediate necessities; and

B. By the life use of the balance if the husband has chosen to relieve her of the burden of investment, etc., by the erection of a trust of the remaining part of her intestate share for her life use.

The next step in the evaluation of the statute is to essay its terms in the light of these stated purposes and to determine whether they are reasonably capable of an interpretation effectuating them.

By subdivision " 1 " the widow is given " a personal right of election to take   *   *   *   her share of the estate as in intestacy subject to the limitations   *   *   *"   that " (a) " she " shall in no event be entitled to take more than one-half of the net estate of the decedent;" " (b) " where the intestate share exceeds $2,500 and testator has erected a trust for the life benefit of the widow, the principal of which equals or exceeds $2,500 in amount, she may elect only to take $2,500 in cash; " (d) " where testator has made outright provisions for her of $2,500 or more and has erected a trust for her life benefit of a sum equal to or exceeding the excess part of her intestate share, she shall have no right of election; " (e) " where the conditions are the same as in " d," but the outright gift is less than $2,500, she may receive outright enough to make up $2,500; and " (f) " " where the aggregate of the provisions under the will for the benefit of the surviving spouse including the principal of a trust, or a legacy or devise, or any other form of testamentary provision, is less than the intestate share, the surviving spouse shall have the limited right to elect to take the difference between such aggregate and the amount of the intestate share, and the terms of the will shall otherwise remain effective."

Reduced to lowest terms, these provisions enact that:

1. The widow shall receive a benefit from the estate of the decedent equal to what her share would have been on intestacy but not exceeding one-half the net estate.

2. The testator may lawfully make this gift to her by an outright bequest or devise of the value of $2,500 and the erection of a trust of a sum equal to the balance with income payable to her for life,

but he cannot reduce her rights in his estate below this point without her acquiescence or consent.

The wording of the enactment, when read in the light of the stated purpose of the proposed change in the law to disable a "neglectful husband" from depriving his widow of ample participation in his estate, demonstrates the wholly untenable nature of the argument of the executor that the terms of the will at bar preclude any right of election by the widow. It is urged that so long as the terms of the testamentary instrument purport to give the widow property equal to half the value of the estate she cannot complain even though the assets which the testator pretends to give her are not a portion of his own property. The logical results of this argument demonstrate its absurdity. The realty conveyed to the spouses as tenants by the entirety was equally the property of both during their joint lives and became the sole property of the survivor. (*Bertles* v. *Nunan*, 92 N. Y. 152, 156; *Matter of Klatzl*, 216 id. 83, 86; *Hiles* v. *Fisher*, 144 id. 306, 313; *Matter of Lyon*, 233 id. 208, 211.) It could no more form a part of the estate of the decedent than could the Empire State Building or the Brooklyn Bridge, and an attempt by the testator to solve his statutory obligations of provision for his widow could no more be satisfied by the gift of the former than by that of the latter.

The chief purpose of the enactment was to enforce after the death of the "neglectful husband" his obligation of support of his wife which existed during his lifetime, and this was for her maintenance out of his own estate and not from hers. From this point of view, therefore, the purported gift to the widow of her own property was as nugatory for the purpose of defeating her right to take against the will as if he had bequeathed to her property belonging to an utter stranger.

The second main contention of the executor attempts to invoke against the widow the doctrine of equitable election recently discussed by this court in *Matter of Smith* (150 Misc. 367). The basis of this principle is that "a person shall not claim an interest under an instrument without giving full effect to that instrument, so far as he can." This rule of law has, however, no application to a case like the present, since the widow is here claiming not under the will, but under the statute, and the provisions of the will do not grant her a right, but merely restrict the right to receive one-half of the estate outright which she would have possessed were it not for the directions of the will.

It is primary that the right to dispose of property on death is a creature of positive law and not a natural right. (*Matter of Bergdorf*, 206 N. Y. 309, 316; *Sultan of Turkey* v. *Tiryakian*, 162

App. Div. 613, 615; affd., 213 N . Y. 429; *Knowlton* v. *Moore*, 178 U. S. 41, 55; *Matter of Barbour*, 185 App. Div. 445, 457; affd., 226 N. Y. 639; *Matter of Killough*, 148 Misc. 73, 85.) Being purely the result of statutes and solely within the legislative control of the State ( *United States* v. *Perkins*, 163 U. S. 625, 627; *Matter of Mullen*, 143 Misc. 256, 257), its laws may place such conditions or limitations thereon as its policy may dictate, or may even abolish entirely any right to transmission of property on death. ( *United States* v. *Perkins*, 163 U. S. 625, 629; *Mager* v. *Grima*, 8 How. 490, 493.) In the enactment of section 18 of the Decedent Estate Law, the State of New York exercised this right of limitation. As this court observed in *Matter of Greenberg* (141 Misc. 874, 887; affd., 236 App. Div. 733; affd., 261 N. Y. 474): " The effect of the enactment here under construction is to give a conditional right of testamentary disposition. In effect, it is that in the absence of a valid consent to the contrary by his spouse, a person leaving a surviving spouse may, subsequent to August 31, 1930, make testamentary directions respecting his temporal affairs only to the extent of the property of which he dies seized and possessed, which would not pass to the surviving spouse if he died intestate, unless his composite disposition of his property complies with the conception of the Legislature as to what is an adequate provision for such spouse, depending on his financial standing. The only extension to this power of testamentary disposition is found in the cases in which the law determines that the surviving spouse is unworthy of the protection accorded."

Under the facts of the case at bar, the Legislature granted the testator the right to divert the property composing his net estate from his widow only to the extent of one-half of its value. He attempted to do more, wherefore his act can have no validity against the opposition of his wife in so far as it transcends the authority which the law accords him in this regard. His power of disposition is strictly limited and he cannot extend it by indirection through an attempt to coerce his wife by the imposition of an implied condition that she subject her own possessions to his will. Her ownership of the real property referred to in the second item of the will is absolute by reason of the terms of the conveyance. It is equally complete in respect to at least the life use of a full one-half of the net estate of the testator by virtue of the terms of the statute, and the decedent is powerless to impose on her absolute statutory right a condition that she surrender property of which she is the unquestionable owner.

A collateral question arises regarding the rights of the widow in respect to the automobile and articles of household furniture

which testator also purported to bequeath to her under the second item of the will. These purported gifts are to be considered in connection with the provisions of the eighth item of the will which stipulated that the provisions of the will should be received by the widow in lieu of all her rights in the estate. If the automobile possessed a value of only $400, as is asserted by the widow, it became her property *dehors* the testamentary instrument by reason of the provisions of subdivision 3 of section 200 of the Surrogate's Court Act (*Matter of Benjamin*, 150 Misc. 857, 858; *Matter of Blowstein*, 147 id. 870, 872), and the same applies to the household furniture if its value did not exceed the value specified in this statute. (*Matter of McClelland*, 134 Misc. 166, 167; *Matter of McNamara*, 138 id. 526, 533.)

These articles, to the values specified in section 200 of the Surrogate's Court Act, became the absolute property of the widow by operation of law, did not form assets of the estate, and were no more the subject of testamentary direction by the decedent than was any other property of the wife or of an independent third person. (*Matter of Hallenbeck*, 195 N. Y. 143, 145; *Crawford* v. *Nassoy*, 173 id. 163, 166; *Sheldon* v. *Bliss*, 8 id. 31, 34; *Matter of Shonts*, 191 App. Div. 427, 432; revd. on other grounds, 229 N. Y. 374; *Matter of Barthel*, 111 Misc. 727; affd., 192 App. Div. 926; *Matter of McNamara*, 138 Misc. 526, 533; *Matter of Shulenburg*, 114 id. 155, 159; *Matter of Leonard*, 113 id. 205, 208; *Foryciarz* v. *Prudential Ins. Co.*, 95 id. 306, 309; *Matter of Baldwin*, 67 id. 353; *Matter of Hulse*, 41 id. 307; *Matter of Mack*, 164 N. Y. Supp. 590, 591, not otherwise reported.) Their purported gift to the widow by the terms of the will could, therefore, form no consideration for the imposition of any conditions on the exercise of her other rights for the same reasons heretofore considered in connection with the purported gift of the real property held by the entirety.

The final question for examination in the determination of whether the widow possesses a right of election to take in contravention of the terms of the will, is purely one of a construction of the provisions of the instrument itself. She possesses some such right under the statute unless the terms of the will gave her outright money and/or property to a value of $2,500 plus either additional outright gifts and/or trust benefits for her life, the total value of which amounted to one-half of the net estate.

The purported gift of the real property in item " second " cannot, as noted, be considered in this calculation. Whether or not any part of the other concomitant directions falls into this category will depend on their value as hereinbefore discussed. If the allegations of the widow in this regard are found to be correct, they

do not. If the opposing contentions be demonstrated, the excess of the value over the rights given the widow by section 200 of the Surrogate's Court Act will be applicable in total or partial extinguishment of her right to receive $2,500 outright.

The real question at issue in the case, therefore, concerns the proper interpretation of the " third " item which directed the erection of the trust. Did this effect a gift in trust for the life of the widow of a full one-half of testator's net estate less property belonging to the estate and over which testator had the power of disposition which was given to the widow outright?

The language employed directed the setting aside of a " principal fund * * * which added to the value of the said premises 150 80th Street * * * shall constitute one-half the net value of my estate."

The special guardian ingeniously argues in substance that the court should interpolate the words " my interest in " after the words " value of " in the foregoing excerpt.

It is unquestionable that the court has some power to supply words to a will to arrive at its correct meaning (*Matter of Gallien*, 247 N. Y. 195, 200; *Leggett* v. *Stevens*, 185 id. 70, 77; *Matter of Barr*, 233 App. Div. 290, 293; *Matter of Kenny*, 224 id. 152, 157; affd., 250 N. Y. 594; *Nolan* v. *Nolan*, 169 App. Div. 372, 374; *Williams* v. *Petit*, 138 id. 394, 396), but this authority is exercisable only in aid of testator's dispositive intent (*Matter of Gallien, supra; Matter of Kenny, supra; Nolan* v. *Nolan, supra; Matter of Vowers*, 113 N. Y. 569, 572; *Eidt* v. *Eidt*, 203 id. 325, 328; *Matter of Eustis*, 140 Misc. 344, 346; *Matter of Whitmore*, 147 id. 129, 133), and it cannot be done where the effect of such action would substantially amount to the making of a new will. (*Matter of Kennedy*, 149 Misc. 188, 189; *Matter of Hopner*, 148 id. 748, 752; *Matter of Howells*, 145 id. 557, 559.)

The limits of the power of the court in this regard are succinctly summarized in *Nolan* v. *Nolan* (169 App. Div. 372, 374): " If the language used in a will has a clear meaning, it must be accepted as disclosing the intent * * * the court must not construe a will contrary to the ordinary meaning of the language used upon conjecture as to intent, or upon suspicion that the testator did not understand the expressions used. * * * The courts are to construe, not construct. We cannot assume that the testator and the one who drafted the will did not understand the ordinary meaning of the language used or that they were ignorant of the rules of property rights."

The applicability of these principles to the situation at bar is obvious. It was not the intent of the testator to erect half

of his estate into a trust for the widow. He clearly and unambiguously expressed his wish that she should have the house outright and only such additional sum in trust " which added to the value of the said premises  *  *  *  shall constitute one-half the net value of my estate." While the court may at times go to somewhat unusual lengths to sustain the validity of a will, this by no means implies that it should take similar pains to defeat a right of election, particularly where, as in the instant case, the testator obviously attempted to limit the benefit to his wife to the irreducible legal minimum. His intent being obvious that she should receive benefits under the will only to the extent of one-half of his estate *including* the value of the real property which was not his, he has failed to comply with the statutory requirements and the widow may elect against the terms of the instrument.

The final question in the case relates to the extent of this right of election. It is urged on behalf of the widow that she is entitled to receive one-half of the estate outright, the arguments in this connection being based upon two contentions. These are, *first*, that by reason of the extraordinary powers purported to be granted to the fiduciary, no proper trust whatsoever was erected for her benefit; and, *second*, that the language of subdivision " f " of section 18 is inapplicable to the situation herein disclosed with the result that her basic right to receive one-half outright exists without qualification.

It may readily be admitted that were the powers with which testator has attempted to invest his fiduciaries capable of effectuation, there might be considerable room for argument that the intent of the Legislature respecting the benefit intended to be conferred on the widow had not met with compliance. The instrument, in this regard, is a somewhat exaggerated example of the type of document recently affected by a certain class of fiduciaries who seek to assume for themselves unlimited powers with an absolute minimum of responsibility. In the majority of cases, however, these efforts result merely in the erection of a legally innocuous bogeyman wholly undeserving of the hysterical terror which they sometimes evoke.

The directions in the will at bar which seem to arouse the keenest apprehensions in the widow are:

1. The power of the executor to name his successor, who may act without bond;

2. Discretionary powers of sale of estate property;

3. Authorization to hold non-legal investments;

4. That the fiduciary shall be relieved of all liability " for any act of omission or loss in the performance of his duties except for wilful neglect or misconduct; " and

5. That the judgment of the fiduciary as to allocation and value of assets shall be conclusive.

In *Matter of Walsh* (147 Misc. 281) the court considered a testamentary authorization to an executor to name his successor, and whereas the question there determined was quite different from that presently raised, certain of the thoughts therein expressed are here pertinent. It is ridiculous to suppose that the testator would intentionally jeopardize his entire estate by placing it within the control of one unworthy of such confidence, and were he so to do, the rights of its beneficiaries are capable of complete protection under sections 99 and 104 of the Surrogate's Court Act.

The discretionary powers of sale and investment, while broad, are by no means unusual, and are to be construed with and strictly limited by the primary obligations of a fiduciary of good faith, diligence and prudence which are inherent in the office. (*Matter of Flint*, 240 App. Div. 217, 225; *Matter of Blake*, 146 Misc. 780, 782–784; *Matter of Lanza*, 149 id. 95, 97; *Matter of McCafferty*, 147 id. 179, 202, 203; *Matter of Rooney* v. *Wiener*, Id. 48, 50; *Matter of Taft*, 145 id. 435, 439, 440; *Matter of Storts*, 142 id. 54, 56, 57.) It is probable that the number of trusts in which such powers are given to the fiduciaries at least equal those in which investment in legally authorized securities is required by the terms of the appointment and it can hardly be demonstrated that the reasonable exercise of such powers has proved more disasterous to those interested in the trusts than certain forms of legally authorized real estate investments have turned out to be.

The attempted exoneration of the fiduciary for any loss unless occasioned by " willful neglect or misconduct " is a nugatory provision amounting to nothing more than a waste of good white paper, and, in. a case like the present, the same applies to the authority purported to be granted of making a final and unassailable determination of the value of the securities to be allocated to the various beneficiaries. Section 18 of the Decedent Estate Law gives to the widow the beneficial right in a fixed percentage of the estate, and the values of the various elements going into its makeup are justiciable facts concerning which the opinions or determinations of the fiduciary are certainly not binding and, indeed, hardly legally interesting.

The Legislature has not undertaken to define the variety of trust, the erection of which shall effect a *pro tanto* compliance with the requirements of the section for the benefit of the widow, wherefore any trust of the usual nature would seem to come within the contemplation of the enactment. (*Matter of Byrnes*, 260 N. Y. 465, 473.) With the excision of the two noted excrescences, the present trust complied with this description.

The final argument on behalf of the widow in support of her right to be paid her entire intestate share in cash, is directed to the wording of subdivision 1 (f) of section 18, which is quoted in full *supra*, and more particularly to the connotation of its third word, " aggregate." It is maintained that this subdivision does not apply to the facts here disclosed, since the only effective gift to the widow is of the trust in item " third " and that " aggregate " implies a total resulting from the addition of several parts. The Standard Dictionary defines " aggregate " as meaning: " The entire number, sum, mass, or quantity of something; amount; complete whole." It is obvious that under any of these meanings one provision may be the " aggregate," if there are no more units to fall into the class. That the word was used in this sense in the section is entirely obvious when the purpose of the statute, as hereinbefore noted, is considered.

The court, therefore, determines that the widow in the case at bar is entitled to exercise a limited right of election against the will under the provisions of subdivision 1 (f) of section 18 of the Decedent Estate Law. In case her election is duly made, the amount to be erected into the trust for her life benefit is one-half of the net value of the estate less the value of the premises 150 Eightieth street, Brooklyn, and she is entitled to receive in cash the value of said premises less the value of the articles of personal property, if any, referred to in the " second " item of the will which do not already belong to her either by reason of prior ownership or pursuant to the provisions of section 200 of the Surrogate's Court Act.

Proceed accordingly.