In the Matter of the Estate of JAMES S. MILNE, Deceased.

Surrogate's Court, Kings County, April 27, 1937.

*Cullen & Dykman,* for the petitioner Arthur E. Goddard, as executor, etc.

*Brennan, Flamman & Simpson* [*William T. Simpson* of counsel], for Henrietta B. Milne, widow, and Anna Bailey Milne, daughter.

*Cabell, Ignatius & Lown,* for Arthur Julian Milne, James Irvine Milne, Dorothy M. Fred and Agnes Milne Murdock, children by a prior marriage.

*James Hunter,* special guardian for Jane Strachan Milne and Barbara Milne, infant children of second marriage.

WINGATE, S. This is a proceeding under section 145-a of the Surrogate's Court Act for a determination of the validity and effect of the election of the surviving wife of the decedent to take an intestate share against the provisions of his will. The pertinent facts have been stipulated.

The decedent and the respondent intermarried on January 11, 1907. She was his second wife, and there are now living four children by his first marriage, who are the real opponents of the widow's claim.

The spouses appear to have lived together until in or about the year 1918, during which period two children were born to them. At some time prior to August, 1918, they separated, and under date of August seventh entered into an agreement which provided for their continued separate residence. It also arranged that the decedent should pay his wife monthly sums of $300 in full for her support and that of the children of the marriage. In this connection it further read:

" Mr. Milne further agrees to and has simultaneously herewith conveyed and assigned to the Brooklyn Trust Company, all of his right, title and interest of, in and to the following United States Liberty Bonds, aggregating Forty-five hundred dollars, to wit [here follows a description of the bonds].

" To be held and disposed of by the said Brooklyn Trust Company according to the terms of a certain agreement made between Mr. Milne, Mrs. Milne and the Brooklyn Trust Company, dated August 7th, 1918."

The agreement further contained covenants against any claim by either against the property of the other and various other stipulations customary in contracts of this type. They are presently immaterial, however, by reason of the final clause of the agreement, which read:

" 10. Provided, however, and these presents are upon the express understanding and agreement that if Mr. and Mrs. Milne shall

become and be reconciled and again cohabit together, or if their marriage shall be dissolved by order of court, that then and in every such case this agreement, and the provisions and conditions thereof, shall become null and void, and of no effect, but without prejudice to any act or thing done, or right accrued, or proceedings taken hereunder on the part of any of the parties hereto."

Simultaneously with the execution of this separation agreement another agreement was executed by the decedent and his wife and the Brooklyn Trust Company. By its terms the wife made no agreements or covenants whatsoever. The decedent agreed forthwith to turn over to the trust company certain specified bonds, which are identical with those enumerated in the separation agreement. The trust company, in return, agreed to hold the bonds and to accumulate the income therefrom until Jane Milne, the youngest of the decedent's children, attained her majority or previously died, and thereupon to pay the accumulations to the two children or their survivor, and thereafter to pay accruing income to such children or their survivor until the death of the wife, whereupon the trust was to terminate and the principal be paid to them or their survivor.

It was further provided that in case both children predeceased Mrs. Milne, or if the decedent died before Jane attained her majority, the trust should terminate and the principal and all accumulations should be paid to Mrs. Milne. The final pertinent provision of the agreement was that if Mrs. Milne died and both children predeceased her, the principal and all accumulations should be payable to the decedent.

This agreement was absolute in form and contained no reservation or condition authorizing its modification or revocation by the settlor or any other person.

The bonds specified in the trust agreement were delivered by the decedent to the trust company which has since held them pursuant to its terms. At the date of the decedent's death, Jane had not attained her majority.

In or about the month of September, 1918, the decedent and his wife became reconciled and again cohabited together and thereafter lived in apparent peace and amity up to the date of the decedent's death. In view of this fact, it is obvious that paragraph 10 of the separation agreement effected a nullification of its terms.

The only provision for the widow which is found in the will which has been admitted to probate and which bears the date of April 19, 1933, is contained in its " Second " item, which reads:

" I give and bequeath to my wife, Henrietta B. Milne, a trust deed held by the Brooklyn Trust Company in her favor."

According to the stipulation of the parties, the principal assets held by the Brooklyn Trust Company under the deed of trust were worth $4,418.05 as of the date of death and the accumulated income amounts to $4,789.29. The net estate of the decedent is appraised at approximately $25,400.

The widow has served a notice of election pursuant to the terms of section 18 of the Decedent Estate Law, to take her intestate share in contravention of the terms of the will, and none of the other parties dispute her right so to do. The only controversy emerges when the subject of the quantum of her rights is reached. The diversity of opinion which has developed is due to the differing viewpoints of the parties in respect to the effect of the reconciliation of the parties on the trust agreement with the Brooklyn Trust Company.

Whereas the legacy to the widow of the " trust deed " is certainly something less than a pattern of lucidity, the intention of the testator appears reasonably obvious to bequeath to her the rights existing pursuant to that instrument and to limit her participation thereto. Even if it were to be granted that the assets in the hands of the trust company constitute property subject to the testamentary disposition of the testator, it is obvious from the stipulations respecting values that the widow would possess some elective rights, since the addition of the trust assets to those of the estate would make an aggregate of $34,607.34, of which the widow is, under section 18 of the Decedent Estate Law, entitled to one-third, amounting to $11,535.78.

It is the contention of the children by the first marriage that the reconciliation of the parties effected a complete abrogation of the trust, with the result that its assets reverted to the testator and became subject to his testamentary disposition, with the consequence that having bequeathed the trust assets to the widow, she is entitled only to the difference between their value and one-third of the total of the trust assets plus the assets of the estate itself, or a net sum of $2,328.44 from the latter.

The widow adopts the extreme opposite position, asserting, in substance, that the reconciliation of the parties had no effect upon the trust for the reasons that no power of revocation or modification was contained therein and that even if it were proper to construe it and the separation agreement together, which is denied, yet the tenth paragraph of the latter did not purport to affect " any act or thing done, or right accrued " prior to a reconciliation, and that the erection of the trust and the creation of rights thereunder come within this description, wherefore, she is entitled to the assertedly independent rights created by the trust

instrument, which, being hers in any event, were not subject to testamentary disposition by the decedent and are not to be deducted from her statutory one-third interest in the estate. (*Matter of Curley*, 151 Misc. 664, 670; affd. as to this point, 245 App. Div. 255; affd., 269 N. Y. 548; *Matter of Curley*, 160 Misc. 844, 846, 847.)

A possible intermediate position is conceivable by reason of the recent decisions of the Court of Appeals in *Morris* v. *Morris* (272 N. Y. 110) and *Hawthorne* v. *Smith* (273 id. 291), to the effect that, as events have transpired, the accumulation of income directed in the trust instrument was void, as being payable other than to the minor during whose minority the accumulation was directed, with the result that it passed either to the children or reverted to the settlor, and if the latter, that its gift to the widow by the will effected a *pro tanto* solution of the decedent's obligation of testamentary provision for her.

The selection of the proper alternative among these several possibilities must inevitably furnish an interesting opportunity for mental calisthenics for some learned judicial officer, but the indulgence in this particular exercise is denied to this court since it involves a determination of the construction and effect of an *inter vivos* trust instrument, in respect to which Surrogates' Courts possess no jurisdiction. (*Matter of Lyon*, 266 N. Y. 219, 224; *Matter of Hearn*, 158 Misc. 370, 378; *Matter of Kraetzer*, 147 id. 609, 610; *Matter of McCafferty*, Id. 179, 186; *Matter of Rosenblum*, 146 id. 537, 538, 539.)

All which this court is authorized to determine is that the widow is entitled to receive as in intestacy one-third of the total net estate of the decedent, less such portion thereof, if any, as was given her by the " Second " item of the will. Whether or not that gift was of anything which the decedent had power to give depends upon the construction of the trust instrument, which is possible only in the Supreme Court which has authority to adjudicate the rights *in personam* resulting therefrom, whereas in connections like the present the authority of the surrogate is limited to determinations *in rem* in respect to the assets of the decedent which he had not lawfully conveyed in his lifetime. (*Matter of Bradford*, 159 Misc. 482, 485; *Matter of Lusher*, Id. 387, 389; *Matter of Sichel*, 162 id. 2, 4; *Matter of Grube*, Id. 228, 230.)

The court accordingly determines in the affirmative the right of the widow to take as in intestacy against the terms of the will, but the fixation of her concrete recovery must be postponed until after a determination in the Supreme Court of the rights, if any, of the decedent in the trust at the time of his death.

Enter decree, on notice, in conformity herewith.