Morgan Smith Executive Director Department of Local Affairs 1313 Sherman Street, #518 Denver, CO 80203
Dear Mr. Smith:
This is in reply to your request for an attorney general's opinion: First, the relationship between the State Board of Equalization and the Advisory Committee if a conflict of policy arises; second, whether the term "aggregate valuation" refers to the grand total of all taxable property in the county or to each class or subclass of property within a county as set forth in section 39-1-105.5(1)(b)(I), C.R.S. (1983 Supp.)?
QUESTIONS PRESENTED AND CONCLUSIONS
Your request for an attorney general's opinion presents two questions:
1. Does the State Board of Equalization have authority over the Advisory Committee if a conflict of policy arises when the Advisory Committee is exercising its statutory duties?
 My conclusion is that the duties of the Advisory Committee are to review and approve or disapprove manuals, appraisal procedures, and instructions prepared by the property tax administrator prior to publication. It is the duty of the State Board of Equalization to provide guidance and directives as to taxation policies consistent with the Colorado Constitution and state statutes. The State Board of Equalization has supervisory power over the property tax administrator and is empowered under section 39-9-103, C.R.S. (1983) to set taxation policies to be implemented by the property tax administrator. Actions of both the Advisory Committee and the property tax administrator must be consistent with policies announced by the State Board of Equalization. If any dispute should arise between the property tax administrator and the Advisory Committee, the issue should be submitted to the State Board of Equalization for resolution.
2. Does the term "aggregate valuation" refer to the grand total of all taxable property within a county, or to the total of each class or subclass of property within a county?
 My conclusion is that the term "aggregate valuation" applies to the total of all taxable property within a county.
ANALYSIS
1. The Advisory Committee was created pursuant to section39-2-129, C.R.S. (1982), in the Department of Local Affairs, to advise the property tax administrator. The function of the Advisory Committee as set forth in section 39-2-131, C.R.S. (1982), is unambiguous. The committee's duties include: the review and approval or disapproval of appraisal procedures, manuals, and instructions prepared and published by the administrator pursuant to section 39-2-109(1)(e), C.R.S. (1973). It also reviews approaches to appraisal as set forth in section39-1-103(5)(a), C.R.S. (1973). The function and powers of approval and disapproval of the Advisory Committee only arise when the property tax administrator has prepared manuals or procedures for publication. Once the manuals have been prepared by the property tax administrator, the Advisory Committee must review said manuals to ensure compliance with sections39-2-109(1)(e) and 39-1-103(5)(a), C.R.S. (1973), and State Board of Equalization policy. Prior to the property tax administrator's preparing a manual for publication, the Advisory Committee has no powers to review or set policy. The Advisory Committee cannot set policy because there is no statutory authority that would allow it to do so.
The State Board of Equalization's duties are not limited to determining the valuation for assessment of taxes of various classes of real and personal property. Article X, section15(1)(c) of the Colorado Constitution pertinently provides "State Board of Equalization . . . shall perform such other duties as may be prescribed by law." Pursuant to this authority, the legislature has enacted section 39-9-106, C.R.S. (1982), which states: "the state board of equalization shall have supervision of the administration of all of the laws concerning the valuation and assessment of taxable property and the levying of property taxes in this state." Additionally, article X, section 15(2) of the Colorado Constitution provides that the State Board of Equalization shall appoint and supervise a property tax administrator to administer the property tax laws and such other duties as may be prescribed by law. These constitutional and statutory provisions clearly reveal the board's power to supervise and administer the property tax laws in the state. This power of supervision would also include the power to set guidelines and policies that the property tax administrator must follow in preparing manuals and publications.
Since the State Board of Equalization has the ultimate authority of supervision over property tax laws in the state, it also has supervisory authority over the property tax administrator and the Advisory Committee. The State Board of Equalization may correct any actions of either the property tax administrator or Advisory Committee that are in conflict with the State Board of Equalization's policies or guidelines.
a. The second issue to be addressed is whether the term "aggregate valuation" as set forth in article X, section3(2)(c)(1), of the Colorado Constitution and section39-1-105.5(1)(b)(I), C.R.S. (1982) refers to the grand total of all taxable property in a county or to the total class or subclass of property in a county. The question arises because the legislature has not defined the term "aggregate valuations."
"Aggregate" is defined in Black's Law Dictionary (rev. 4th ed.) (1968) as:
 Entire number, sum, mass, or quantity of something; amount; complete whole, and one provision under will may be the aggregate if there are no more units to fall into that class. In re Curley's Will, 151 Misc 664, 272 N.Y.S. 489 (1934) composed of several; consisting of many persons united together; a combined whole.
"Valuation" as defined by Black's Law Dictionary is: "The act of ascertaining the worth of a thing. The estimated worth of a thing." Lowenstein v. Schiffer, 38 A.D. 178,56 N.Y.S. 674 (1899).
The language of section 39-1-105.5(1)(b)(I) in referring to "aggregate valuation" states:
 (b) (I) Pursuant to section 39-1-104 (16) (b), for each property tax year beginning with the property tax year which commences January 1, 1985, the annual study shall, in addition to other requirements, determine and set forth the aggregate valuation for assessment of each county for the year in which the study is conducted. (Emphasis added)
Section 2-4-212, C.R.S. (1973) regarding the interpretation of statutes, states:
 2-4-212. Liberal construction. All general provisions, terms, phrases, and expressions, used in any statute, shall be liberally construed, in order that the true intent and meaning of the general assembly may be fully carried out.
The legislature, to ensure uniformity of ad valorem taxation in the state, has created a two step process to reach this goal.
First, pursuant to section 39-1-104 (16)(a) (1983 Supp.), the legislature has mandated that the director of research of the legislative council contact a private person as consultant to perform a valuation of assessment study. The consultant is to sample each class of property statistically to determine whether the assessor for that county has followed the proper procedure and laws for determining the valuation for assessment of each class of real and personal property in that county. The valuation of assessment study also includes the "aggregate valuation" for assessment of each county.
The legislative intent as evidenced by the language of section39-1-104(16)(a), supra, would unequivocally indicate that the term "aggregated valuation" to applies only to the total property of the county.
Secondly, the county assessor is required to list, appraise, and value all classes of real and personal property within his county. The assessor also must include the total aggregated valuation for his county in the abstract of assessment. The completed abstract of assessments are filed with the property tax administrator, who reviews them to ensure compliance with the constitutional and statutory provisions and the study. If the abstracts of assessments are incomplete, erroneous, or not in compliance with the constitution or statutory provision and the study, the abstracts are returned for corrections. Section39-5-124(2), C.R.S. (1973).
The audit procedures described above prohibit the assessors from arbitrarily and capriciously valuing property in a manner that is neither uniform nor consistent with the ad valorem laws of the state. These procedures also attempt to create uniformity among counties.
The language of section 39-1-104(16), C.R.S. (1973) supports the conclusion that the legislature intended the study to include the valuation for assessment of each class of real and personal property and the aggregated valuation for for the total property within a county. Therefore, the term "aggregated valuation" as used in section 39-1-105.5(1)(b)(I), C.R.S. (1983), applies to the grand total of property in the county. With respect to the example problem, you asked whether the following circumstances could be considered lawful. To wit:
 / An / audit discloses that an assessor applied the 5 percent tolerance level to the assessment rate of each class instead of total value. Therefore, the class valuations reflect an assessment rate of 16 percent instead of 21 percent on improved residential and 24 percent instead of 29 percent on all other.
Is there any way this could be considered lawful?
No. Article X, section 3(1)(b), of the Colorado Constitution mandates that: "all residential property in the state is to be assessed at 21 percent of its actual value and all other property in the state is to be assessed at 29 percent of its actual value." Any assessment of property or a rate other than that mandated by the constitution is unlawful.
SUMMARY
The duties of the Advisory Committee as set forth in section 39-2-131, C.R.S. (1973), do not include the authority to set policy. Nor can the Advisory Committee perform any acts that are in conflict with the policies and guidelines of the State Board of Equalization, which has the sole and exclusive authority to regulate and administer the property tax laws within the state.
The term aggregate valuation as used in section 39-1-105.5(1)(b)(1), C.R.S. (1983), applies to the grand total of all taxable property within a county, not to each class or subclass within a county.
Very truly yours,
 DUANE WOODARD Attorney General
REAL ESTATE TAXATION AND REVENUE WORDS AND PHRASES
Section 39-9-103, C.R.S. (1973) Section 39-2-131, C.R.S. (1982) Section 39-2-109(1)(e), C.R.S. (1973) Section 39-9-103(5)(a), C.R.S. (1973) Section 39-9-106, C.R.S. (1982) Section 39-1-105(1)(b)(I), C.R.S. (1982) Section 39-1-104(16)(a), C.R.S. (1983) Section 39-5-124(2), C.R.S. (1973)
AFFAIRS, LOCAL, DEPT. OF
The State Board of Equalization is given exclusive power under the Colorado Constitution and state statutes to supervise and administer the property tax law in the state. In carrying out its duties as set forth in the constitution and state statutes, the State Board of Equalization has supervisory authority over the property tax administrator and the Advisory Committee and therefore, there can be no conflict of policy between the State Board of Equalization and the Advisory Committee. The term "aggregate valuation" applies to the total real property in a county and not an individual class or subclass of property in a county