The judgment and order appealed from should be affirmed, with costs.

Present — HIRSCHBERG, P. J., WOODWARD, JENKS, BURR and RICH, JJ.

Judgment and order unanimously affirmed, with costs.

---

In the Matter of the Probate of the Last Will and Testament of CHARLES FERDINAND HOFFMAN, Deceased, as a Will of Real and Personal Property.

ROSALIE A. AVERY and Others, Appellants; MARGARET HOFFMAN and Others, Respondents.

Second Department, October 7, 1910.

Will — rules of construction — intention governs — when absolute gift not cut down by subsequent provisions — when ownership of personal property not illegally suspended — disposition of remainders not working intestacy.

In determining the validity of a will, the court will gather the intention of the testator from the language used in the light of all the circumstances, and if that intent be legal the will will be given effect.

Where a will begins with an absolute gift in order to cut it down the latter part of the will must show as clear an intention to do so as the prior part does to make it absolute.

A codicil does not operate to revoke or modify a previous bequest beyond the clear import of the language used.

A will bequeathed specific sums to two specified nieces of the testator, the legacies to be held in trust to provide for them in their old age, save that each on attaining the age of thirty years was allowed to receive a portion of her legacy to purchase a home. In the case of the death of either niece without issue before the death of a sister of the testator who received a legacy under another clause, the share of the decedent was to revert to the sister, with a further proviso that if either of the said nieces should die without issue after the death of the sister and prior to the death of their grandmother, then their respective shares should revert to the grandmother. A specific bequest was made to the sister to be held on a similar trust and in case of her death before her mother, the gift was to revert to the latter.

*Held*, that each of the legatees took an absolute estate in her legacy, subject to the trust;

That on the termination of the trust the original gifts remained in effect and vested in the issue of the legatees, or in the other contingent remaindermen named so that the testator did not die intestate as to the remainder;

That there was no illegal suspension of the ownership of the fund as no one of the trusts could extend beyond the life of the legatee.

The will made the testator's mother residuary legatee, the property to be placed in trust as in the case of the prior trusts to provide her with funds in her old age, at her death the principal and any accumulated income to be divided *pro rata* between the nieces and the sister on the basis of their respective legacies subject to the same restrictions imposed on the several legacies.

*Held*, that the two nieces and the sister took an absolute interest in the residuary estate, subject to the trust which terminated on the death of each of the legatees ;

That the will did not continue the residuary estate in trust after the death of the mother, but it vested in the other legatees in the ratio of their respective legacies, the shares thus created being merely a new trust which terminated absolutely on the death of the owner of each part.

By a codicil the testator revoked the legacy given to his sister and substituted one of a less amount subject to all the conditions expressed in the original gift.

*Held*, that the only effect of said codicil was to reduce the original legacy and to reduce proportionately the share of the legatee in the residuary estate on the death of the testator's mother.

By another paragraph of the codicil the testator gave two specific legacies to other persons making them upon the death of the mother *pro rata* residuary legatees under the terms and conditions of the will.

*Held*, that the death of said legatees prior to that of the testator did not work an intestacy as to such portion of the residuary estate as would have come to them had they survived.

Where a residuary bequest is not circumscribed by clear expressions in the instrument and the title of the legatee is not narrowed by special words of unmistakable import, he takes whatever may fall into the residue whether by lapse, invalid disposition or other accident.

APPEAL by the contestants, Rosalie A. Avery and others, from a decree of the Surrogate's Court of the county of Kings, entered in said Surrogate's Court on the 29th day of April, 1910, admitting to probate the will of Charles Ferdinand Hoffman, deceased, and a codicil thereto, and construing the provisions thereof.

The opinions of the surrogate are reported in *Matter of Hoffman* (65 Misc. Rep. 126 ; 67 id. 334).

*D-Cady Herrick, J. Brownson Ker* and *Charles W. Dayton, Jr.,* for the appellants.

*Edwin T. Rice* and *Benjamin A. Morton,* for the respondents.

WOODWARD, J. :

Charles Ferdinand Hoffman died in the borough of Brooklyn on April 9, 1909, leaving a last will and testament, which has been admitted to probate, and the questions arising on this appeal go to the validity of the will, and to the proper construction thereof, if the same is held to be valid. Like most of our troubles in this life, the alleged defects in this will are only to be found by those who are looking for them ; they have no tangible existence, so far as we have been able to discover. We are to look to the language of the will, and we are to gather its intention from that language, in the light of all the circumstances, and if the intent of the testator, as so expressed, is a legal one, then it is to be given effect.

The will recites the place of birth, and the time, declares that the testator has never married and has no descendants, and then in its 1st article declares that "I grant and bequeath unto my niece Margaret Hoffman seventy-five thousand dollars ($75,000)." The 2d article provides : "I grant and bequeath unto my niece Carolyn, or Carrie Hoffman fifty thousand dollars ($50,000)." So far these gifts are absolute, and of fixed sums, and the rule is well established that whenever a will begins with an absolute gift, in order to cut it down, the latter part of the will must show as clear an intention in that direction as the prior part does to make it, and a codicil will not operate to revoke or modify a previous devise or bequest beyond the clear import of the language used. ·(*Goodwin* v. *Coddington,* 154 N. Y. 283, 286, and authorities cited.) After making the above absolute gifts, one of $75,000 and the other of $50,000

Second Department, October, 1910.          [Vol. 140.

the testator provides : " Both the foregoing legacies shall be held in trust as herein provided in Art. VIII and no husband of the legatees nor any relative or person shall have any control whatsoever over either the principal or income thereof. The income shall be paid only to said legatees respectively and an amount of ten thousand dollars ($10,000) of the principal may be paid to each of them if they so elect when they attain the age of 30 years, to purchase and furnish a home severally to be held in their own several names and right, free from any other control whatsoever. The remainder of their respective legacies shall remain in trust as provided above as a protection or provision in their old age, and in case of the death of either of them without issue, before the death of their Aunt Inez Hoffman, legatee under Art. IV herein, then the share of such decedent shall in such event revert to her, the said Inez Hoffman. And in case either said nieces should die without issue subsequently to the death of their Aunt the said Inez Hoffman and prior to the death of their grandmother, Caroline Hoffman, then in such case their respective shares shall in like manner revert to their grandmother, Caroline Hoffman."

Following the above provisions is the 3d article of the will giving to a brother, since deceased, a plantation in the State of Louisiana, and then the 4th article provides that " I grant and bequeath unto Henrietta Louisa Hoffman, commonly known in the family as Inez Hoffman, the sum of one hundred and twenty-five thousand dollars ($125,000) with the proviso that the same shall be placed in trust as herein provided in Art. VIII and the income thereof be paid to herself only, no relatives of hers nor any husband that she may ever have, nor other person shall have any control whatsoever over either the principal or income hereby devised, with this proviso, however, that she may if she wish draw not exceeding ten thousand dollars ($10,000) with which to purchase and furnish a home for herself to be held in her own name and right free from all other control whatsoever. In case of her death without issue and prior to that of her mother, all her interest herein shall revert to her mother. I furthermore hereby transfer and make over to the said Inez Hoffman all my right, title and interest in and to the estate of my mother, Caroline Hoffman, in the City of New Orleans, State of Louisiana."

It is obvious that the scheme of the testator, as thus far revealed, was to make absolute gifts of certain fixed sums of money to his two nieces and a sister, but being fearful of their ability to care for the same, for he tells us in the 8th article that they " are wholly ignorant of sound business principles and methods," he conceived the idea of placing these several gifts in the hands of a trustee, for the purpose of paying over the income during their respective lives, subject to the provision, however, that they might draw $10,000 each of the principal for the purpose of providing and equipping homes, which should be held in their own names and rights. The testator treats of these gifts as separate funds all through the will, and while it is true that under our statutes the legal title to the funds vests in the trustee, this vesting is only for the purpose of the trust, and this ends with the lives of each of the three legatees, and when the trust estates terminate, the original gift is still in full effect; it operates to dispose of the property of the testator. This was clearly held in the case of *Felter* v. *Ackerson* (35 App. Div. 282), where the testator provided in the 3d clause of his will that " All the rest, residue and remainder of my property, both real and personal, I give and bequeath to my four sons and two daughters, * * * to be divided equally between them, share and share alike," and in the 7th clause provided that " I order and direct that the shares to be given to my sons William S. Felter and John J. Felter, Jr., be held in trust for them and that George William Reimer, of Rockland Lake, act as trustee of said property and pay over to said William S. Felter and John J. Felter, Jr., the respective incomes derived therefrom." The Special Term held that by the 7th clause a valid express trust was created of the shares of each of the two sons named, and that as to the remainders on their death the testator died intestate and that the same passed to the testator's heirs at law. On appeal the court held that the Special Term was correct in holding that a valid trust for the lives of the two sons was created, but say, " we think that the court at Special Term erred in its determination that the remainders in these shares after the death of the respective equitable life tenants were undisposed of by the will. The 3d clause, standing by itself, would give to the plaintiffs absolute estates in their respective shares. Two rules of law relative to the construction of wills are well settled. The *first* is that where

an estate is given in one part of the will in clear and decisive terms, it cannot be cut down by any words in a subsequent clause that are not as clear and decisive as the words of the clause giving that estate. * * * *Second*, that the law prefers a construction of a will which will prevent intestacy to one that will permit it. * * * We are of opinion that the direction of the 7th clause, that the shares of the plaintiffs be held in trust, is so clear and express as to limit the previous absolute gift found in the 3d clause. But the provisions of the 7th clause modify or abrogate those of the 3d clause only to the extent to which the provisions are inconsistent. The Special Term held, and rightly, as we think, that a trust in one of these shares was created only during the life of the equitable life tenant. Therefore, to this extent only does the 7th clause revoke or modify the absolute gift found in the previous clause. The remainder after the death of the life tenant, which was given to such life tenant by the 3d clause, remains wholly unaffected by the subsequent dispositions of the will, which deal only with the life estate." This is exactly the case now before us, and it is in harmony with the strong implication of the will that the estate is to vest in the issue of the several legatees if issue survive them. (See *Close* v. *Farmers' L. & T. Co.*, 195 N. Y. 92, 100, and authorities there cited.)

If we are correct in this, then each of the three legatees mentioned above took an absolute estate, to the amount of the legacy, in the testator's estate, subject to the trust, and the testator did not die intestate as to any of such funds, nor could the trust be extended beyond the single life of each of such legatees. The gift absolute becomes effective upon the termination of the trust, and the trust fund becomes a part of the estate of the legatee, just as the home which may be purchased with a portion of the trust fund becomes a part of such estate. There is no difficulty about this, unless it might be that the implication of the will is so strong that it would necessitate the vesting of the estate in the issue of such legatee surviving, and this question is not necessarily determined here. The question here is whether there is an illegal suspension of ownership of this trust fund, and, as we have seen, there is no possibility of such suspension, for by the terms of the will the trust ends with the life of the legatee, and the original gift becomes effective, so

that there is no intestacy as to the fund, and no suspension of ownership beyond the life of the legatee.

The 5th article of the will grants and bequeaths to a nephew the sum of $1,000, to be doubled if the nephew is married, and the 6th article reads as follows : " I make and appoint my mother Caroline Hoffman residing in the city of New Orleans, State of Louisiana, my residuary legatee, the amount to be placed in trust as herein provided in Art. VIII for her sole benefit, and the income thereof to be paid to her without the control of any other person whatsoever, the intention being to provide her with funds in her old age against all possible contingencies. At her death, the principal and any accumulated income there may be, shall be divided *pro rata* between the legatees named in Articles I, II and IV herein respectively upon the basis of their respective legacies herein and to be subject to the same trust restrictions stated herein appertaining to their several legacies hereunder."

That is, the trust fund provided for his mother was to be divided at her death and shared by each of the several legatees mentioned on the basis of the former gifts ; each one took a positive and defined share of the residuary estate, subject to the trust provision, which was to terminate upon the death of each one of the legatees, the same as had been provided in the other positive gifts. The will did not continue the residuary estate in trust after the death of the testator's mother ; it vested in the original legatees upon the basis of their original legacies, and the shares thus created simply constituted a new trust, which was to terminate absolutely upon the death of the owner of each several part.

The 7th article of the will provided that if there was not enough of the residuary estate to provide a fund of at least $200,000 for the mother, then the other gifts should be scaled down to provide such fund ; but this contingency could not arise, and so the clause is of no importance, except as indicating the intent of the testator to provide for his mother under all circumstances. The 8th article merely appoints the Union Trust Company of New York as executor and trustee under the will, and the 9th article gives to his mother certain personal articles, and this completes the will.

So far there appears no difficulty in the matter. All of the provisions of the will are within the letter and spirit of the law, and

all of the estate is disposed of according to the intention of the testator. Subsequently the will above considered was modified by a codicil, the 1st paragraph of which reads as follows: "I hereby cancel and revoke all legacies devised and bequeathed in Art. IV herein in favor of Henrietta Louisa Hoffman and substitute in place thereof the sum of $25,000, say twenty-five thousand dollars subject to all the conditions and terms as expressed in said Art. IV with this exception to wit:— that the sum of $2500, say twenty-five hundred dollars instead of ten thousand dollars, be allowed her out of said amount for purchase of a home for herself if she so lects."

Obviously the only effect of this provision was to reduce the original legacy of $125,000 to $25,000, and proportionately to reduce the share of Henrietta Louisa Hoffman in the residuary estate, so called, in the event of the death of the testator's mother, which event actually occurred prior to the death of the testator.

The 2d paragraph of the codicil provides that, "I hereby devise and bequeath unto my sister Widow Wilhemina Bourdette residing on Peters Avenue, Sixth District, City of New Orleans, La., the sum of $35,000, say thirty-five thousand dollars and to John F. Hoffman now residing on my Carolina Plantation Iberia Parish State of Louisiana the sum of $10,000, say ten thousand dollars. And I hereby make these two legatees, upon the death of my mother *pro rata* residuary legatees under the terms and conditions as set forth in Art. VI herein, as additional residuary legatees. The above legacy to John F. Hoffman is in addition to the one in his favor under Art. III herein."

Caroline Hoffman, testator's mother, John F. Hoffman, testator's brother, and Wilhemina Bourdette, testator's sister, the two latter of whom were made additional residuary legatees by the provisions of the codicil last above quoted, died prior to the death of the testator. No one seriously contends that either John F. Hoffman or his sister Wilhemina took anything under the codicil, but it is urged that as the testator made them additional residuary legatees, this operated to cut down the shares of Margaret Hoffman, Carrie Hoffman and Henrietta Louisa Hoffman as fixed by the will and codicil in the residuary estate after the death of testator's mother, on the theory that the testator intended such a result, and that thus

the testator died intestate as to so much of the residuary estate as would have belonged to John F. Hoffman and his sister Wilhemina if the two latter had survived the testator. This construction is opposed to that rule which requires the construction which avoids intestacy, and is strained and unnatural. The clear intent of the testator was to give to his legatees, as a class, all of the residuary estate after the death of his mother. This was clearly expressed in the original will, and the codicil merely added two names to the class. The will concededly never operated to give either of these two parties any right or title to the specific legacies given them, or to give them any part of the residuary estate. If they had survived the testator they would have participated in the residuary estate in the proportion that their legacies bore to those given to the other legatees, and having predeceased the testator they have no part either in the disposition of the specific legacies or in the division of the residuary estate. There was no gift to two or more persons, which under the provisions of the Revised Statutes and the Real Property Law would have constituted the legatees tenants in common (1 R. S. 727, § 44; Gen. Laws, chap. 46 [Laws of 1896, chap. 547], § 56; Consol. Laws, chap. 50 [Laws of 1909, chap. 52], § 66; *Matter of Kimberly*, 150 N. Y. 90, 93), but specific gifts to each of several persons, first of a definite sum in each of three instances, and then the gift of a proportionate share of the residuary estate, based upon the amount of the original gift. The amount given in the first instance to Margaret Hoffman of $75,000 fixed her share in the residuary estate; she was given $75,000 immediately, and the remainder upon the death of the testator's mother, for whom the residuary estate was held in trust. The codicil made specific bequests to two other persons individually, and provided that each of these persons should share in the residuary estate in proportion to their legacies, but both of these legacies became inoperative by reason of the death of the persons named prior to the death of the testator, and the specific legacies fell into the residuary estate. At the death of the testator, when the will became operative, the situation was exactly the same as though the last two legatees had not been provided for; they took no specific legacies, consequently they took no rights in the residuary estate. It was all there in the one fund to be divided

among the several legatees in proportion to their specific legacies, and this disposed of all the estate.   It was not a fund to be divided, depending for the amount upon the number to be divided with, but a fund to be distributed among his legatees in the proportion of their specific legacies; the language of the will disposed of this residuary estate, not to a class, but to individuals in specific proportions.   If there had been no disposition of the residuary estate there might be some force in the contention of the appellants, but here the will itself provides for disposing of the residuary estate, and the residuary estate consists of all that has not been legally disposed of by the will itself, other than by the residuary clause. (*Morton* v. *Woodbury*, 153 N. Y. 243, 257.)   There was no disposition of that part of the estate attempted to be given to John F. Hoffman and his sister Wilhemina, owing to the fact that they predeceased the testator, and these sums fell into the residuary estate. The doctrine is firmly established that where the residuary bequest is not circumscribed by clear expressions in the instrument, and the title of the residuary legatee is not narrowed by special words of unmistakable import, he will take whatever may fall into the residue, whether by lapse, invalid dispositions, or other accident. (*Morton* v. *Woodbury*, *supra*, 254, 255, and authorities there cited.) Here the residuary bequest was to each of several legatees in the proportion of their original legacies, and there being no limiting words, it seems clear, under the authorities, that they take whatever remained undisposed of by the terms of. the will other than the residuary clause.

The decree of the surrogate should be affirmed, with costs.

HIRSCHBERG, P. J., JENKS, RICH and CARR, JJ., concurred.

Decree of the Surrogate's Court of Kings county affirmed, with costs.