In the Matter of the Estate of KATHERINE OSBORN, Deceased.

Surrogate's Court, Broome County, January 17, 1934.

*Harry T. Dolan*, for the executor.

*Frank W. Ballard*, for Mary Osborn Ballard.

*Hinman, Howard & Kattell*, for the Home for Aged Women.

*Jenkins, Deyo & Hitchcock*, for the Susquehanna Valley Home.

*M. N. Goodrich*, for Hazel Johnson and another.

BAKER, S.  Questions of preference and abatement of legacies have been presented for determination on this executorial accounting.

By her will, dated June 22, 1925, and admitted to probate in this court on March 29, 1933, testatrix in paragraphs numbered " third," " fifth," " sixth " and " seventh," respectively, made the following testamentary directions, the effect of which are the subject-matter of the present construction proceeding;

" *Third*. I give and bequeath to Mary Osborn Ballard, the wife of Frank W. Ballard, Esq., of Batavia, New York, the sum of Five Thousand Dollars."

" *Fifth*. All the rest and residue of my estate both real and personal of which I shall die seized and possessed, or to which I shall at my decease be in any way entitled, I give, devise and bequeath to my executor hereinafter named, the Peoples Trust Company of Binghamton, in trust, nevertheless, for the use and benefit of my cousin Martha Waldo Osborn so long as she may live, the net income therefrom to be paid over to the said Martha Waldo Osborn during her lifetime.

" *Sixth*. Upon the death of my said cousin, Martha Waldo Osborn, I give and bequeath:

" (a) To Ida Wells Williams, the wife of George Williams of Mentor, Ohio, the sum of Five Thousand Dollars, if she shall survive my said cousin, the said Martha Waldo Osborn, and in case she does not so survive, I direct my said executor to pay said sum of

Five Thousand Dollars to the children of said Ida Wells Williams, equally, share and share alike.

" (b) To the Home for Aged Women, Binghamton, New York, the sum of Ten Thousand Dollars, the income thereof to be used to pay the admission fees of worthy women without funds to pay their admission. The interest on said Ten Thousand Dollars to be allowed to accumulate from time to time until sufficient for such purpose.

" (c) To the Susquehanna Valley Home, Binghamton, New York, the sum of Ten Thousand Dollars.

" (d) To the Centenary Methodist Episcopal Church, of Binghamton, New York, the sum of Two Thousand Dollars, to be known as the Rosetta Osborn Gift.

" *Seventh.* After the payment of the said sums, to the persons and corporations above named, I give, devise and bequeath all the remainder of my said estate, both real and personal to Mary Osborn Ballard hereinbefore named, if she shall survive my said cousin said Martha Waldo Osborn, to be hers absolutely and forever. But, in case the said Mary Osborn Ballard does not survive my cousin the said Martha Waldo Osborn, then and in that case, I direct my executor to pay over all the remainder of my said estate to the children of the said Ida Wells Williams equally, share and share alike, to be theirs absolutely and forever."

It appears that Martha Waldo Osborn, the *cestui que trust* in the said "fifth" paragraph of this will, predeceased testatrix.

It further appears by the account filed herein that there remains for distribution to the parties entitled thereto the sum of $13,721.50, subject to the commissions of the executor and the expenses of the accounting proceeding.

For the information of the court, a stipulation by counsel for the respective parties appearing herein was entered on the record to the effect that testatrix at the time she executed the instant will was possessed of property ample to satisfy in full all of the legacies provided for therein. Counsel request that the court permit the introduction of parol evidence herein to show that at the time of the execution of her will, testatrix's intention as to the disposal of her property was at variance with the provisions of the will, and that she did not mean what she has said in words. There is no ambiguity in the language used by the testatrix in the instant will and such request was properly denied under the well-settled rule that parol evidence may not be considered, except to explain a latent ambiguity arising *dehors* the instrument or to rebut a resulting trust (*Tierney* v. *Fitzpatrick,* 195 N. Y. 433; *Brown* v. *Quintard,* 177 id. 75, 83; *Dwight* v. *Fancher,* 217 App. Div. 377; affd., 245 N. Y. 71; *Mann* v.

*Executors of Mann*, 1 Johns. Ch. 231, 234), and where there is a patent ambiguity susceptible of resolution thereby. (*Matter of Fowles*, 95 Misc. 48, 51; affd., 222 N. Y. 222; *Matter of Phipps*, 214 id. 378.)

It is fundamental that the only intention of a testator which the court is empowered to effectuate is that intention expressed in the will and which flows as the necessary consequence from its expressed instructions. (*Matter of Durand*, 250 N. Y. 45, 54; *Matter of Crouse*, 244 id. 400, 404; *Matter of Rossiter*, 134 Misc. 837, 839, 840; affd., 229 App. Div. 730; affd., 254 N. Y. 583.)

As is the case with all questions of intention, no precedents are absolutely controlling, for all cases differ. In construing wills, courts have consistently sought to discover and be guided by the intention of a testator.

In order to determine the intention of a testator, separate clauses and phrases are not to be considered alone, but the whole will taken together, and each part construed with relation to the language used in other parts, and effect given to the general intention to be ascertained. (*Phillips* v. *Davies*, 92 N. Y. 199, 204; *Roe* v. *Vingut*, 117 id. 204, 212; *Tilden* v. *Green*, 130 id. 29, 51.)

It is true, as Surrogate WINGATE states in *Matter of Smallman* (138 Misc. 889, at pp. 896, 897): " The question is not, therefore, what he would have desired had he realized that his estate would be insufficient to pay all benefits in full, but what he actually had in mind when the will was made. The court is powerless to construe the will on the basis of the eventualities which have actually transpired since such an act would not amount to a construction of the will which was actually made, but would be a rewriting of the instrument by the court in the manner in which it might conjecture the testator would have wished, had he foreseen the actual turn of events. This the court is properly powerless to do.

" Looking for the intention of the testator at the time the will was drawn, ' It is to be presumed that the will was drawn honestly and in good faith and that when the testator provided a legacy he intended that it should be paid.' (*McGoldrick* v. *Bodkin*, 140 App. Div. 196, 199.) ' He naturally expects that all legacies will be paid in full ' (*Matter of Neil*, 238 N. Y. 138, 140), and ' It should be assumed that the testator in framing his testamentary scheme contemplated that his property was sufficient in amount to carry it out in all details.' (*Matter of Title G. & T. Co.*. 195 N. Y. 339, 344, 345.) "

Unfortunately, and due solely to the insufficiency of property in this estate at the present time, it is impossible to effectuate complete payment of the legacies provided for in the said " sixth "

paragraph of the instant will, and the legatees named therein contend that the testatrix at the time she signed this will intended that the legacy to Mary Osborn Ballard in the said " third " paragraph of her will should be on a parity with the legacies given in the said " sixth " paragraph, and, that due to the insufficiency of property in this estate at the present time to pay all of the legacies provided for in the will at bar, should also be subject to abatement.

As stated before, the language used by the testatrix in the instant will is unambiguous, and in my opinion the primary and dominant purpose of this testatrix, at the time she signed the will, and clearly expressed therein, was, after the payment of her debts and funeral expenses, together with provision for perpetual care of her cemetery lot and the erection of a suitable marker thereon, to provide in a liberal manner for Mary Osborn Ballard by the bequest to her of the sum of $5,000 in the said " third " paragraph of her will. Testatrix also desired that her cousin Martha Waldo Osborn should have all of her personal effects, together with the personal property consisting of household furniture, etc., in her home in the city of Binghamton, N. Y., and made such provision in the " fourth " paragraph of her will.

I am also of the opinion that the secondary thought of the testatrix, at the time she signed the will, and also as clearly expressed in the said " fifth " paragraph thereof, was to create a trust fund of all of the residuum of her estate, for the benefit of her said cousin, Martha Waldo Osborn, for and during the term of her natural life, and that upon the decease of said Martha Waldo Osborn the corpus of said trust fund was to be distributed among the persons and corporations, and in the manner provided, in the " sixth " and " seventh " paragraphs, respectively, of the will at bar. No other intent or meaning can be imputed from the words, " All the rest and residue of my estate," used by the testatrix in the sentence in the beginning of the said " fifth " paragraph of this will, or from the words, " After the payment of the said sums, to the persons and corporations above named, I give, devise and bequeath all the remainder of my said estate, both real and personal to Mary Osborn Ballard hereinbefore named," (meaning the remainder of the corpus of said trust fund), used by the testatrix in the sentence in the beginning of the said " seventh " paragraph of this will.

The general principle of law is that legacies should be paid in full before any payment to residuary legatees, and that the residuary legatees cannot call upon the general or specific legatees to make an abatement so as to share proportionately with them. The fact that Martha Waldo Osborn, the *cestui que trust*, predeceased

testatrix cannot change this principle, in application to the will at bar. (*Matter of Title G. & T. Co., supra.*)

Another familiar principle of law is that a testator must be presumed to have used words in their ordinary sense or meaning.

A residuary estate consists of all that has not been legally disposed of by the will itself, other than by the residuary clause (*Matter of Hoffman*, 140 App. Div. 121, 130; *Matter of Herborn*, 189 id. 319; *Morton v. Woodbury*, 153 N. Y. 243, 257), for the legatee or devisee of a residue can take nothing, until all other devises and bequests have been fully satisfied. Law and lexicons thoroughly accord in pronouncing a residuum to be nothing more nor less than what is left. (*Thompson v. Thompson*, 3 Dem. 409, 412.)

I, therefore, hold and determine that the general legacy to Mary Osborn Ballard in the " third " paragraph of the instant will is to be paid in full, without abatement, before payment of any of the legacies provided for in the " sixth " paragraph of said will, and that those legacies must abate *pro rata*.

Submit decree on five days' notice construing the will accordingly.