William F. Christiana, S.
The will of Robert T. Van Deusen and two codicils thereto, disposing of an estate exceeding $1,000,-000, were admitted to probate in this court by decree dated April 14, 1920.
The first 48 items of the will as modified by the codicils contained numerous legacies and set up several trusts.
Article 49th of the will is summarized as follows: “ From and out of what remains of my property I give, devise and bequeath *687 the sum of One Hundred Thousand Dollars ($100,000.00) ”, such sum being given to named executors and trustees in trust for the benefit of a son, Robert Wendover Van Deusen, for his life, and another $100,000 in trust for the benefit of a daughter, Harriett Huyck Van Deusen, for her life. Remainders in each trust were limited to the children of the above-named life beneficiaries. If either should die without children, the income from both funds was continued during the life of the surviving life beneficiary with the ultimate remainders vesting equally in the children of such surviving life beneficiary, and if no such children survived, then to William Wirt Wendover, if living, or if dead, then to his issue share and share alike.
Article 50th of the will is summarized as follows: “I give, devise and bequeath all the rest, residue and remainder of my property, real and personal, of whatsoever name or nature and wheresoever situated, including also any and all of such sums as may come to such residuary by reason of any foregoing provision of this will to my executors and trustees ’ ’, and thereupon follow provisions creating two trusts, both measured by the life of testator’s second wife, Harriet L. Van Deusen, one trust being for the benefit of their son, Robert Wendover Van Deusen and his issue, and the other being for the benefit of their daughter, Harriett Huyck Van Deusen and her issue.
Both of the article 50th trusts terminated upon the death of Harriet L. Van Deusen, on September 19, 1944, and their corpora thereby became payable to the son and daughter.
The assets of testator’s estate were insufficient to pay fully all the legacies contained in his will and codicils. After paying the bequests in the first 48 articles of the will, and those contained in the codicils, there existed a substantial deficit in the trusts contained in article 49th and no funds were available to allocate to the residuary estate.
Inter vivos trusts had been created by testator during his lifetime. One of such instruments, dated January 18, 1918 provided, among other things, that upon the death of Robert Wendover Van Deusen, the son of the settlor, without issue, one half of the principal should revert to the settlor’s estate. The son died without issue on April 21, 1951. One half of the trust corpus thereby flowed into decedent’s estate. The Hanover Bank, as sole remaining executor of decedent, transferred such moneys, in equal shares, to fund in part the existing deficiency in the trusts created under article 49th of the will.
This proceeding is the fifth executorial accounting on decedent’s estate. The estate of the son, Robert Wendover Van Deusen, by answer to the petition herein, has instituted a con *688 struction proceeding, contending that the moneys accruing from the 1918 inter vivos trust deed should be adjudged to form part of the residuary estate and should not be allocated to the satisfaction of other legacies.
An additional, although related problem, is presented by reason of the provisions contained in the 21st article of the will and the fourth paragraph of its first codicil. Article 21st provided that the executors and trustees should set aside securities in trust sufficient to yield an annual income of $500 to be paid to one Martha Ganson during her lifetime and upon her death such securities were to become part of decedent’s residuary estate. Article 21st was revoked by the fourth paragraph of the first codicil which directed in effect that the bequest contained in article 21st should fall into and form a part of decedent’s residuary estate. The son’s estate contends that the legacy given under paragraph fourth of the first codicil should have been paid into the residuary estate and that an amount equal to such legacy should now be recouped from the trusts created under article 49th of the will and paid to the residuary legatees.
The contingent remaindermen of the trusts under article 49th of the will, who are children of William Wirt Wend over, deceased, and the special guardian appointed on their behalf contend that testator’s will requires an interpretation to the effect that the trust legacies created under article 49th should be paid in full before any assets can pass to the residuary legatees. Harriett Huyck Van Deusen, now Harriett Church, appears in this proceeding but takes no position on the questions to be determined. The Hanover Bank appears in a neutral role submitting however a memorandum in support of its executorial actions.
A residuary clause of a will is that provision therein which effectively devises and bequeaths all of a decedent’s testamentary estate not otherwise legally bestowed by the terms of such will. (96 C. J. S., Wills, § 796; Morton v. Woodbury, 153 N. Y. 243, 257; Riker v. Cornwell, 113 N. Y. 115, 124; Matter of Osborn, 150 Misc. 169, 174; Matter of Hoffman, 140 App. Div. 121, 130; Matteer of Mahlstedt, 140 Misc. 245, 256; Matter of Brooklyn Trust Co., 179 App. Div. 262, 264; Hewes v. Meacl, 81 Ohio App. 489.)
Article 50th of decedent’s will concededly embodied its residuary provisions. Hence we move to the crux of the problems presented.
The preponderant weight of authority holds that a residuary clause of a will 'becomes operative only after the debts, admin *689 istration expenses, taxes and legacies have been fully paid and satisfied. Surrogate Foley concisely affirmed this principle in Matter of Gray (176 Misc. 829, 831, affd. 266 App. Div. 732, affd. 292 N. Y. 532) where he stated that a residuary estate “ is what remains after deducting debts, legacies and expenses of administration ’ ’.
Language of similar purport is contained in Page on Wills (Yol. 4, § 14-28, pp. 193-194) where it is said: “ a residue does not exist as long as there are debts which are unpaid, or other legacies which are unsatisfied. Even if the will provides that a lapsed legacy shall be distributed in accordance with the residuary clause, it will be applied first to the satisfaction of other legacies.”
And in Warren Heaton’s Surrogate Court Practice (Yol. 7, § 69, p. 446) there is this confirming statement: “ A residue is what remains of the testator’s estate after debts, bequests and devises have all been deducted. The purpose of a residuary clause is to make a disposition of whatever property remains undisposed after debts and particular gifts have been satisfied.”
The leading case authority is Matter of Title Guar. & Trust Co. (195 N. Y. 339). There the will bequeathed a fund in trust for testator’s wife, and provided that upon her death, the corpus should be paid to and become part of the residuary estate. A similar trust was created for the benefit of a daughter. The will contained numerous general legacies and the residuary clause was in favor of certain charities as well as relatives of the decedent. The assets of the estate were insufficient to pay the general legacies in full, and upon the death of the widow, the question arose as to whether the funds of which she was the life income beneficiary should be used to pay general legacies or be appropriated to the residuary estate. In language frequently quoted (pp. 344-345) the court held that the funds should be used in payment of the general legacies: ‘ ‘ It should be assumed that the testator in framing his testamentary scheme contemplated that his property was sufficient in amount to carry it out in all details. It seems perfectly clear that the testator never anticipated that the placing of these amounts in the residuary estate would, in ease of insufficient assets, lead to the abatement of general legacies and the partial destruction of his main testamentary scheme.”
The rule laid down in Title Guar. & Trust has been consistently followed in cases involving the disposition of reversionary trust interests where there has been a deficiency of assets to pay general legacies. (Matter of Thompson, 126 Misc. 99, affd. 218 App. Div. 130, affd. 245 N. Y. 565; Matter of *690 War schemer, 136 Misc. 433, affd. 232 App. Div. 669; Matter of Smallman, 138 Misc. 889; Matter of Cook, 162 Misc. 504; Matter of Wood, 33 N. Y. S. 2d 726.) An interesting illustration of the tendency is found in First Nat. Bank & Trust Co. v. Baker (124 Conn. 577; ann. 118 A. L. R. 339, 344, 352) where the will provided that at the termination of the trust, “ the funds constituting it ’ ’ were ‘ ‘ to become a part of my residuary estate ”. Nevertheless, in spite of such specific direction, the court held that the trust funds must, at the termination of the trust, be used to make up deficiencies in general legacies bequeathed in the will before passing to the residuary estate.
A masterly summary of the general rule is given in American Jurisprudence (Yol. 57, Wills, § 1459, p. 982) as follows: “ The principle that in the absence of contrary context in the will, residuary legacies must first be absorbed in the payment of debts, has been applied to cases involving lapsed legacies and funds accruing to an estate at the termination of a testamentary trust or annuity, with the results (1) that sums which would have passed to the residuary legatee upon the lapse of a particular legacy had the assets been sufficient to pay debts and legacies in full must be used, where the assets are insufficient for such purpose, to make good any deficiencies in the general legacies given by the will before they may pass to the residuary legatee, and (2) that funds set apart by the will as trusts or for the payment of annuities, the will either failing to provide for their disposition upon termination of the trust or annuity or directing that they shall at that time pass into the residue, must, when the trust terminates or the annuitant dies or in some other way loses his right to the annuity, be used for payment of any deficiency in the general legacies set up in the will before passing to the residuary legatee.”
It is to be expected that some cases appear to hold to the contrary. In Matter of Reynolds (242 N. Y. 389) the will created a trust for the benefit of one Mary C. Schulze and provided that upon her death the corpus was to be paid over “ to the Institutions hereinafter named in Clause Twelfth ’ ’. The “ Twelfth ” provision was the residuary clause; The estate was insufficient to pay all of the legacies. Certain legacies, where preferential language was used, abated pro rata, and other legacies in which no preferential language was used, abated outright. Upon an accounting proceeding, following the death of the life beneficiary, the question arose as to the allocation of the principal of the Schulze trust. The courts below had held that the fund was applicable to the deficiencies due upon the *691 preferred legacies to the exclusion of the residuary legatees mentioned in the Twelfth clause of the will. The residuary legatees appealed to the Court of Appeals claiming the lower courts had erred in their disposition of the Schulze remainder. The Court of Appeals sustained the residuary legatees holding (p. 393): “ We think the appellants are right in this contention. The distinction between this case and the Baxter case in 195 N". Y. is vital and determinative. The gift of the remainder in that case was to the residuary estate. The gift of the principal of the Schulze trust in this case is not to the residuary estate, but to certain specified legatees. The fact that they are specified in the ‘ twelfth ’ clause instead of in the ‘ eighth ’ clause does not change the result.”
Thus, in distinguishing the Reynolds case it should be observed that the gift was not to the recipients as residuary legatees but as beneficiaries nominatim under the Eighth article of the will.
In Matter of Bustis (140 Misc. 344) the question was whether the reversionary interest of an inter vivos trust, executed prior to the will, should pass under the residuary clause of the will or whether such interest passed by intestacy. The court found a clear intent in the language of the will that the property in question was to be excluded from the dispositive effect of the residuary clause and held the reversion in question passed as in intestacy. The holding clearly turns on testator’s intention as expressed in the will.
In Wetmore v. St. Luke’s Hosp. (56 Hun 313) the will presented several problems. Among other things, there was a deficiency of assets to pay the legacies and the will seemed to contain more than one residuary clause. The court noted with approval the general rule applicable to funding prior legacies before the residuary legatees were entitled to take, when it stated (pp. 318-319): “ In order that there should be a residuary estate the provisions of the will must be fulfilled and something must be left over. Debts and legacies must be paid and then the residuum goes to the residuary legatees. But until the debts and legacies are paid it is difficult to see how, under the residuary clause, residuary legatees are entitled to receive anything. In fact, as has already been said, there cannot be a residuum where there is not sufficient of the estate to pay the charges which have been placed upon it. ’ ’
However, one of the trust legacies provided that upon the death of the life tenant, the corpus of such trust was to fall into and be disposed' of as part of the residuary estate. In *692 construing this particular- portion of the will, the court said (p. 320): “In the consideration of this question it is necessary to bear in mind that the testatrix supposed her estate would be sufficient to pay the whole amount of her legacies. Having this in mind, it seems to be perfectly apparent what she meant by her residuary estate in respect to the trust funds mentioned. The legacies provided for in the will became payable within one year after her death. These trust estates might exist for a considerable length of time. She did not intend that these general legacies should be left open until these trust estates should fall in; and it cannot be assumed that, in referring to her residuary estate, she had in mind anything else than the final residuum which would remain after the payment of all her leg*acies, and which would finally pass under the residuary clause to the four infants mentioned therein. She, supposing that her estate was sufficient to pay all the legacies, could certainly not have intended that, upon the termination of these trust estates, the funds composing them should fall into a residuum which had already served its purpose in the payment of these legacies, and the balance of which had gone over to the final residuary legatees.”
From this language, it may be assumed that the court found in the will ‘1 a contrary context ’ ’ indicating that the particular trust fund in question was intended to pass to the residuary estate rather than be used to pay prior legacies in the event of a deficiency of assets. At any rate, it would seem that the Wetmore decision should be limited to its own particular state of facts.
Descending to the matter at bar, this court is not unmindful of the ancient axiom that a testator’s intention as gathered from his will at the time it was made must be of paramount consideration on any construction proceeding (Matter of Fabbri, 2 N Y 2d 236, 239-240), and that each separate will must be individually interpreted, since no one will totally resembles another. Even so, no useful purpose will be served in reciting per passage every item of decedent’s will and codicils. Suffice to say that under the settled rules of interpretation the instruments seem to reflect an intent at the time they were drawn to pay all legacies in full before the provisions of the residuary clause were to be invoked. This conclusion is particularly supported by a recitation contained in article 48th of the will, quoted as follows: “ I also have in my mind at the time of the making of this my last will and testament, the provisions already made for the children of the said Harriett L. Van Deusen, both by deeds of trust made for their benefit, and by the *693 deed of trust made for the benefit of the said Harriett L. Van Deusen.”
Such language is meaningless unless by its use testator intended to make unmistakcnly evident that he had not overlooked his son and daughter when he exercised his generosity in favor of other beneficiaries.
Turning specifically to the moneys received from the inter vivos trust it is to be particularly noted that the construction sought by the estate of Robert Wendovcr Van Deusen would divide equally between the son’s estate, and respondent Harriett H. Church, property which would otherwise bo held in trust solely for the latter during her lifetime. Such an interpretation does violence to the obvious intent of the article 49th legacy.
It is also to be especially observed that the proceeds received from the inter vivos trust do not represent ‘ ‘ sums as may come to such residuary by any of the foregoing provisions of this will ’ ’ as provided for in article 50th of the will. Such moneys reverted to the testamentary estate only by reason of the provisions of the inter vivos trust deed. The execution of the inter vivos trust (Jan. 18, 1918) preceded the making of the will (Sept. 12, 1918). Hence the trust instrument could not have contemplated an independent gift of its remainder to beneficiaries named in a residuary clause of a will not yet in existence,
However viewed, it is held that the funds falling into testator’s estate from the inter vivos trust instrument, dated January 18, 1918, by reason of the death of Robert Wendover Van Deusen on April 21, 1951, were properly applied by the surviving executor toward payment of the abated article 49th legacies.
Moving to the article 21st legacy of the will, as modified by the fourth provision of the first codicil, it is urged that the son was a party to the four prior executorial accountings and that the decrees settling the previous accounts now constitute a bar to any contention that the legacy in question should be paid to the residuary legatees. This issue, it is asserted, could have been raised and litigated on the previous proceedings. We make no attempt to decide whether the earlier decrees constitute a barrier to the proposed construction for the reason that the defense of res judicata has not been pleaded in this proceeding.
Emphasis is laid on the following phraseology contained in the first codicil revoking the article 21st legacy as reflecting an intent to prefer the residuary legatees over the article 49th trusts: “I hereby revoke the Twenty-first (21st) clause or paragraph of my said last will and testament wherein and whereby I have made provision for Martha Ganson and the *694 whole and all of said paragraph and the said sum therein mentioned shall go with and form a part of my residuary estate on my decease.”
There appears to be nothing in this language which is in conflict with the general principle that as long as there are unsatisfied general legacies, there is no residuary. (Matter of Markey, 125 N. Y. S. 2d 246; Matter of Warren, 52 N. Y. S. 2d 887; Matter of Dean, 169 Misc. 974; Matter of Baldwin, 175 Misc. 986; Matter of Bishop, 207 Misc. 289; Matter of Manson, 194 Misc. 972; Matter of Meiselman, 177 Misc. 46.)
Some suggestion is offered that the phrase ‘ ‘ from and out of what remains of my property ”, as used in the 49th article of the will created specific rather than general legacies. Such gifts constitute general legacies. (Matter of Cameron, 278 N. Y. 352, 359 ; Matter of Crouse, 244 N. Y. 400.)
It is held that the legacy revoked by the first codicil was properly disposed of by using its proceeds to pay the trusts created under article 49th of the will.
It is to be noted that for some 36 years this court has without objection interpreted decedent’s will and codicils as requiring the article 49th trusts to be funded before payments were made into the residuary estate. We conclude that the will and codicils read in their entirety do not disclose an intention to the contrary.
Testator’s will and codicils are construed as requiring the article 49th trust legacies to be fully funded prior to the allocation of any property to the residuary estate created under article 50th of the will.