Edward M. Horey, S.
The proceeding is one for a construction of the last will and testament of the decedent, George S. Hamilton.
The issue raised is one of abatement of legacies.
The facts prompting the construction and giving rise to the issues are as follows: George S. Hamilton, the decedent, was married twice in his lifetime. No children were born of either marriage. Decedent was survived by only his second wife, Ethel Clark (Mather) Hamilton. This surviving wife had been previously married to a man named Mather. Born of her first marriage was a son, Robert Mather. Robert Mather married and he and his wife, Hildelore Mather, were the parents of three minor children, to wit: Jennifer, Lisanne and Andrea Mather. Robert and Hildelore Mather were divorced. The three Mather children remained in the custody of their mother, Hildelore Mather. Following the divorce, Hildelore Mather and her three children resided with the decedent and *42 his second and surviving wife. Their precise relationship to the decedent was respectively stepdaughter-in-law and step-grandchildren. As such they were neither heirs, nor distributees of the decedent. Nevertheless, they constituted the decedent’s "family”. They and the surviving wife were major beneficiaries under decedent’s will.
Under the will, duly admitted to probate, the dispositive provisions made by the decedent are contained in paragraph third through ninth inclusive.
Testamentary provisions for the surviving wife are contained in paragraphs third, sixth and seventh. Particularly relevant to the determination required, they are considered first.
Under paragraph third the surviving wife was devised a life interest in certain real property located in Connecticut. The remainder interest in this real property was devised to decedent’s stepdaughter-in-law, Hildelore Mather.
Under paragraph sixth, the surviving wife was bequeathed the sum of ten thousand dollars.
Under paragraph seventh, the surviving wife was named the life beneficiary of a trust, the principal of which was to be in an amount equal to one half of the testator’s adjusted gross estate as finally determined in Federal estate tax proceedings, reduced by the value of the decedent’s interest in property, if any, which passes, or shall have passed to his surviving wife under any other provisions or paragraphs of the decedent’s will. The remaindermen under the trust were decedent’s stepgrandchildren, Jennifer, Lisanne and Andrea Mather.
The remaining dispositive testamentary provisions are now considered.
Under paragraph fourth, a 1969 Lincoln automobile was bequeathed to decedent’s friend, Richard Hardy.
Under paragraph fifth, all tangible personal property, excluding cash, securities and bank accounts was bequeathed to decedent’s stepdaughter-in-law, Hildelore Mather.
Under paragraph eighth, cash bequests in various stated amounts were bequeathed to 13 named relatives or friends of the decedent. Included as a legatee of $10,000 was a grandniece and minor, one Susan Peebles. The 13 bequests are set forth in individual subparagraphs (a) through (m) inclusive.
Paragraph ninth constituted the residuary clause of decedent’s will. Under it all the rest, residue and remainder of the *43 decedent’s estate was devised and bequeathed to decedent’s stepgrandchildren, Jennifer, Lisanne and Andrea Mather.
The will itself discloses no ambiguities. The need for construction arises by dint of the fact that after payment of funeral, administration expenses, debts and estimated taxes, it appears clear that there will not be sufficient assets to pay all legacies and devises in full. Since the Federal and New York estate taxes have not yet been determined, the precise amount of the deficiency has not yet been fixed. The posture of the proceeding at this time then is that determination must be made of what legacies or devises under the will abate and in what order. The extent to which the abatement will proceed along the determined order for abatement must abide subsequent determination of the precise amount of the deficiency.
EPTL 13-1.3 (subd [c]) (as well as EPTL 12-1.2) stipulates that absent a preference expressed by the testator, the following order of abatement must be observed: (1) distributive shares of intestate property; (2) residuary dispositions; (3) general dispositions (with "demonstrative dispositions” being treated as "general” to the extent that the property or fund charged with a demonstrative disposition has adeemed); (4) specific dispositions, and any income derived therefrom (with "demonstrative” dispositions being treated as "specific” to the extent the property or fund charged with a demonstrative disposition has not adeemed); and (5) any disposition to a surviving spouse which qualifies for the estate tax marital deduction.
However, as previously noted, any or all of these priorities may be superseded by an explicit or tacit direction in the testator’s will to observe a different order of abatement. (See EPTL 13-1.3, subd [e].)
Examination of the will discloses no explicit direction or order for abatement. The guardians ad litem, appointed by the court to represent the interest of infants, both concede this to be the fact.
Consideration of a tacit or implied direction in the will is next in order. Both guardians ad litem urge that an implied direction in favor of their respective wards is contained in the will. Unable to find arguments in support of the bequest to their respective wards alone, each guardian ad litem has skillfully advanced arguments for preferential treatment for a class or a grouping of beneficiaries that includes his respective ward.
*44 The guardian ad litem of the infant, Susan Peebles, a grandniece of the decedent and a legatee under paragraph eighth, argues that a tacit or implied direction for his client is to be found in the long history of marital discord between the decedent and his surviving wife. It is also argued that the bequests to the surviving spouse were delimited to meet only the limited statutory requirements necessary to avoid the exercise of a right of election by the surviving spouse. On these predicates, the guardian ad litem of Susan Peebles urges that preferential treatment should be accorded all of the 13 legatees under paragraph eighth of the decedent’s will, inclusive of his ward who was a legatee of the sum of $10,000. This guardian ad litem urges that the legacies in paragraph eighth should be maintained intact and that any required deficiencies after employing the residuary estate should be made up by reducing the bequests made to the surviving spouse. The court finds no merit in this argument. While the evidence discloses that marital disharmony did exist over a number of years between the decedent and his surviving wife, it also appears that a reconciliation had been effected before the will in issue had been executed. Further, it is not precisely correct to state that the decedent left his wife only the bare minimum to avoid any right of election. If the decedent had wished to do so he could have subjected the wife’s testamentary distributions to estate tax. By directing payment of all taxes from the residuary estate, however, the widow’s interest under the will will not be reduced by necessary contribution to estate taxes. To this extent then, her testamentary distributions exceed the minimum statutory requirements giving rise to a right of election.
The guardian ad litem for the three Mather children also urges the existence of an implied preference in favor of his wards. Two arguments are advanced. First, this guardian notes that the legacy in which his wards share as remainder-men, viz.: paragraph seventh, creating a trust for the benefit of the surviving spouse with the Mather children as remaindermen, precedes in order in the will the legacies to relatives and friends contained in paragraph eighth. Priority in numerical order, he urges, indicates an intention of preferential treatment to the life beneficiary and the remaindermen. The guardian urges that their legacies, as remaindermen should be maintained unabated by reducing the subsequent legacies to the 13 relatives and friends contained in paragraph eighth. *45 The order in which legacies are provided in a will is at best only a factor for consideration. (Matter of Lloyd, 166 App Div 1.) In fact, in Matter of Rae (140 Misc 530), it was held that the sequence of order of legacies in a will has no bearing on the question of preference in abatement. This court does not find the order of legacies in the will here an implication for preferential treatment.
Advanced in favor of his infant remaindermen as a second argument is the proposition that the trust in which they share an interest as remaindermen was a legacy given to a wife. This legacy in the form of a life interest in a trust, the guardian urges, is in lieu of the widow’s right of election. As such, the guardian postulates it should be accorded preferential treatment for abatement purposes. Noting the associated interest of the Mather children in the trust, the guardian by bootstrap extension urges that their remainder interest under that trust should also be given preferential treatment.
The court finds merit in this second argument insofar as it indicates an implied preferential treatment for the surviving wife, but not otherwise.
The long standing rule of preferential treatment of legacies for a widow was reviewed, approved and held in Matter of Smallman (138 Misc 889), a now celebrated and authoritative decision by learned Surrogate Wingate. Initially preferential treatment for legacies to a surviving wife were borne out of consideration of her dower interests. Accepting testamentary legacies in release of the exercise of her dower rights, a wife was viewed not merely as a recipient of her husband’s bounty, but one in the nature of a purchaser. (Matter of Cameron, 287 NY 352; see, also, 9D Rohan, N.Y. Civ. Prac., par 13-1.3, subd [6], cl [b], subcl [vii].) The fact that dower rights have been abolished since September 1, 1930 has not changed the rules concerning a widow’s right to preferential treatment. (Matter of Lanigan, 174 Misc 570.) So settled is the rule of preferential treatment for legacies to a wife in lieu of statutory rights that it has even been sustained when a will directed that legacies to children should be paid in preference to any other legacy. (Rowe v Lansing, 53 Hun 210.) In Matter of Roland (40 Misc 2d 1018), it was held that a legacy given in lieu of a widow’s rights under section 18 of the former Decedent Estate Law would be accorded the same preference.
While the court has found no decision on the point, it seems only logical to extend the rule of preferential treatment to *46 legacies given in lieu of the elective rights of widows under EPTL 5-1.1. This court makes such extension and finds an implied and tacit direction in testator’s will for preferential treatment for the legacies made therein to his surviving wife. Accordingly this court holds that the interest as a life tenant granted the wife in the real property in Connecticut under paragraph third, together with the $10,000 legacy to the wife under paragraph sixth and the interest of the wife as life beneficiary under the trust created under paragraph seventh should all be paid in full without abatement, providing always that the other devises and legacies under the will are sufficient to make up the determined deficit.
The court does not find any implied or tacit direction for preferential treatment in testator’s will for abatement of the legacies of the Mather children. There is no rule of law directing or authorizing preference of abatement of legacies by association. Implied preferential treatment for the wife as a life tenant of a trust is not implied preferential treatment for stepgrandchildren as remaindermen. The court holds that the abatement of the legacies of the Mather children shall be that provided under EPTL 13-1.3 (subd [c]).
Confusion in this case stems in part from the failure to distinguish an implied preferential treatment for a surviving wife for abatement purposes under a will, from the statutory preferential treatment provided her for the same purpose. The two are wholly distinct. The former is by judicially determined action of the testator; the latter by action of the Legislature.
The statutory preferences accorded testamentary dispositions to widows are those contained in the provisions of EPTL 13-1.3 (subd [c]). The preferential treatment for abatement purposes under that statute is limited to only those dispositions to a surviving spouse which qualify for the estate tax marital deduction. It is clear that not all of the dispositions to the surviving wife under the will in question will so qualify. The trust created for the benefit of the surviving wife under paragraph seventh merely confers a life estate upon her. Such a life estate does not qualify for the marital deduction because it does not accord to the wife the right to appoint the remainder of the trust. The widow’s interest here is a terminable one, not qualifying for the marital deduction. (See Internal Revenue Code, § 2056; Internal Revenue Code, Regulations, § 20.2056; and 9A Rohan, NY Civ Prac, par 5-1.1, subd [18].) Similarly and for the same reason that it is a *47 terminable interest, the life estate in the real property in Connecticut devised to the wife under paragraph third will not qualify for the marital deduction. Of the three testamentary dispositions to the surviving wife, only the outright bequest of $10,000 under paragraph sixth qualifies for the marital deduction estate tax treatment. It is only this bequest to the wife that qualifies for dual preferential treatment for abatement purposes — first by determined testamentary implication applicable to all bequests to the surviving wife, and secondly by virtue of statutory priority found in EPTL 13-1.3 (subd [c], par [5]).
Before determining the appropriate order of abatement, one further matter requires resolution. It is necessary to classify within that statutory characterization of testamentary dispositions used in EPTL 13-1.3 (subd [c]), the remainder interest of the Mather children under the trust created for the surviving wife in paragraph seventh. This is not easily done. The classifications available under the statute are "residuary”, "demonstrative”, "general”, and "specific”. (See EPTL 13-1.3, subd [c].) Since paragraph ninth of the will disposes of the residue of the estate, the possible classification of the remainder interest in the trust as "residuary” is eliminated. (Matter of Van Deusen, 24 Misc 2d 686.)
As to additional refinement of classification within the remaining categories available under the statute, it should be conceded initially that prior judicial determinations are of little assistance. In speaking of judicially reported classification of legacies as general, specific or demonstrative, Surrogate Wingate wisely observed: "It is, of course, obvious that these results are, in many instances, in hopeless conflict. If an important office of judicial determinations is to enunciate rules of guidance for the general public, as has been frequently said, the result of those decisions must be to leave both the bar and the laity, not to mention the courts, in a hopeless maze”. (Matter of Smallman, 138 Misc 889, 902, supra.) Text writers are in agreement that the decisional law is impossible to reconcile in this area. This stems from the fact that for construction purposes, "no will has a twin” and because our courts have been motivated to avoid abatement or ademption by judicially bending standard definitions or testamentary language to reach what to the particular court was an equitable determination in the case at hand. (See 9D Rohan, N.Y. Civ. Prac., par 13-1.3, subd [5], cl [a], p 13-145; *48 and 9 Rohan, NY Civ Prac, par 1-2.16, subd [1], p 1-57, and par 1-2.16, subd [2], p 1-60.)
Only one analytical, objective and reasoned attempt at classification of remainder interests of a testamentary trust has been discovered. The review was made by Surrogate Wingate in Matter of Smallman (138 Misc 889, 914, supra). There, the learned Judge points out that the original erection of a trust fund is generally properly classified as a general legacy subject to abatement on ordinary principles. Thereafter, however, the Surrogate observed (p 916): the "trust fund * * * continues as a separate estate, the rights in which are ascertainable only from the portion of the will by which it [was] created.” For reasons well stated the learned Surrogate found that remainder interests in testamentary trusts do not fall within the accepted definitions of a general, specific or demonstrative legacy. Faced with the requirement, nevertheless, of making such a classification, the Surrogate’s conclusion was as follows (p 916): "If these remainder rights must be pigeon-holed and classified, they more nearly correspond to the definition of a specific bequest as applied in Crawford v McCarthy (159 NY 514) than to any other description.” (Italics added.)
Finding nothing in the statutory definition of a "demonstrative disposition” (EPTL 1-2.3) or a "general disposition” (EPTL 1-2.8) or a "specific disposition” (EPTL 1-2.16) which in any way conflicts with the review and analysis of Surrogate Win-gate, and it appearing that the authors of the EPTL intended no change in the previously determined characteristics of such dispositions, but intended merely to codify existing case law (see 9 Rohan, NY Civ Prac, par 1-2.3, subd [1], p 1-25; par 1-2.16, p 1-57; par 1-2.8, subd [1], p 1-39), and the reason and logic of the learned Surrogate appealing to this court, his views are adopted. No direct or implied preference being found in testator’s will, the remainder interest of the Mather children under the trust created for the widow as life beneficiary must be "pigeon-holed and classified” for abatement purposes under the categories which are available under the EPTL (EPTL 13-1.3 and 12-1.2). No separate category for remainder interests yet being provided, this court holds that each such trust remainder interest is properly classified thereunder as a "specific disposition”.
The classification of the nine dispositive provisions of the testator’s will, together with the order for abatement pur *49 poses, and the reasons therefor, are found and determined as follows:
1. Any distributive shares of intestate property. It is noted that no evidence of the existence of such property was introduced by any party on the proceeding for construction and apparently none exists. The authority for the order of abatement is EPTL 13-1.3 (subd [c], par [1]).
2. The dispositions made to Jennifer Mather, Lisanne Mather and Andrea Susan Mather under paragraph ninth of the testator’s will. It is determined that the bequest and devise of the residue there made is a "residuary disposition within the meaning of EPTL 13-1.3 (subd [c], par [2]) and the order of abatement is in accord with the provisions of that provision.
3. The dispositions made to the 13 legatees under paragraph eighth of testator’s will. Each disposition there falls within the statutory definition of a "general disposition” (see EPTL 1-2.8) and is determined to be such. They properly abate in the order determined pursuant to the provisions of EPTL 13-1.3 (subd [c], par [3]).
4. The dispositions of (a) the remainder interest "in the real property in Timber Trails in the Town of Sherman, Connecticut” bequeathed to Hildelore Mather under the provisions of paragraph third of testator’s will, and (b) "my 1969 Lincoln automobile” made by the testator under the provisions of paragraph fourth of his will to Richard Hardy, and (c) "my tangible personal property, etc.” bequeathed to Hildelore R. Mather under the provisions of paragraph fifth of testator’s will, and (d) the remainder interest under the trust created under the provisions of paragraph seventh of testator’s will and bequeathed to Jennifer Mather, Lisanne Mather and Andrea Susan Mather, after the death of the life beneficiary. Each disposition set forth in this paragraph is determined to fall within the statutory definition of a "specific disposition” as set forth in EPTL 1-2.16, as extended by prior applicable and adopted judicial determination. (See Matter of Smallman, 138 Misc 889, supra.) The determined order of abatement is provided for under EPTL 13-1.3 (subd [c], par [4]).
5. (a) The interest as a life tenant bequeathed to testator’s wife in the real property in Timber Trails, in the Town of Sherman, Connecticut, under paragraph third, which interest is determined to be a "specific disposition” within the meaning of EPTL 1-2.16 and (b) the interest as a life beneficiary in the *50 trust created for the benefit of the testator’s wife under paragraph seventh of the testator’s will, which interest is determined to be properly classified as a "general disposition” (see EPTL 1-2.8 and Matter of Smallman, 138 Misc 889, supra), and (c) the disposition of the $10,000 bequeathed to testator’s wife, Ethel Clark Hamilton under the provisions of paragraph sixth of testator’s will, which said interest is determined to be a "general disposition” within the meaning of EPTL 1-2.8 shall be the last to abate. The order of abatement of the provisions in this paragraph is based upon the found and determined implied intention of the testator to give preferential treatment for abatement to the legacies and devises set forth. The authority to give such preferential treatment is contained in EPTL 13-1.3 (subd [e]).
All dispositions in each numbered paragraph immediately hereinbefore determined shall abate in full before access is made to those in the following paragraph, e.g. all residuary dispositions in paragraph second shall abate before access is made to the general legacies in paragraph third. Further, the dispositions contained in each numbered paragraph where abatement is required shall abate pro rata.
A procedural and jurisdictional issue remains to be resolved.
It concerns the interest of Glenita Oslund in this proceeding. A legatee of $100,000 under the provisions of paragraph eighth of decedent’s will, she appeared in person before the court on July 1, 1974, the date of the initial return of citation giving rise to this construction proceeding. She advised the court that she had retained Canadian counsel who in turn had retained an attorney from Syracuse to represent her interests. The court advised that no notice of appearance by any attorney had been made on her behalf. The court instructed Ms. Oslund to advise her attorney to file a notice of appearance immediately. The attorney for the petitioner advised the court that he had been in contact with Ms. Oslund’s New York counsel; he had already advised him of the need to file a notice of appearance and believed that one would be forthcoming immediately. No notice of appearance was filed.
On the adjourned date of the proceeding, August 5, 1974, neither Ms. Oslund, nor her attorney appeared in person. Court proceedings having been concluded on that date the court took the matter under advisement.
On August 20, 1974 a letter was received by the court on *51 the stationery of an attorney, Frank S. Gualtieri, advising: "this office” had been retained to represent Glenita Oslund. The letter was signed by Francis R D’Addario. An instrument denominated an "affidavit” accompanied the letter. This "affidavit” was made by attorney Frank A. Gualtieri, and it relates that he is the attorney for Glenita Oslund. The court was requested to consider the contents of the "affidavit” before making a decision. The "affidavit” submitted is one of argument and not fact. Substantially, it advances the same argument as that of the guardian ad litem for Susan Peebles.
No proof is before the court that the notice of the legal representation by attorney Gualtieri of Ms. Oslund was ever given to other counsel, except the oral notice to the attorney for petitioner. Neither is there any evidence that a copy of the "affidavit” was ever served upon any counsel appearing in this proceeding. In fact, the absence of any reference in either the letter or the "affidavit” that copies were forwarded to other parties leaves the implication that notice of neither document was ever given.
It was not until November 19, 1974, that a written notice of appearance was filed with this court. That notice of appearance recites that it is Francis R D’Addario that is designated as "attorney for Glenita Oslund”. It does not appear that the notice of attorney D’Addario’s representation of Glenita Oslund has been given to anyone other than the court.
It is obvious that there is presented a question of which attorney actually represents Glenita Oslund. The matter is one of more than academic interest. Rights in reference to a legacy of $100,000 are involved and so also is the question of personal jurisdiction binding an interested party with the decisions of this court. Any interoffice practice of attorneys which jeopardizes the rights and interests of clients is sloppy, improper and dangerous. A court should not be required to speculate on who is the proper legal representative of a party in interest.
There are four methods of appearing in Surrogate’s Courts of this State. An appearance may be made: (1) by pleading; (2) by executing an acknowledged waiver of issuance of service of process; (3) by serving upon the attorney for the petitioner and filing with the clerk of the Surrogate’s Court a written notice of appearance signed by the attorney appearing for a party, or by the party himself, except when the party is an infant or incompetent, a corporation or a voluntary association; and (4) *52 finally, an appearance may be made in person noted upon the record in open court. (SCPA 401, subd 2.)
This court resolves the matter of Glenita Oslund’s legal representation as follows: It considers her presence in court on July 1, 1974, duly noted on the record as an appearance. It considers the subsequent affidavit of attorney Frank A. Gualtieri dated August 19, 1974 and received by the court on August 20, 1974, a pleading. It also considers his recitations therein that he has been retained at the behest of a Canadian law firm as attorney for Glenita Oslund and the attorney’s signature to such affidavit, together with the admitted advice to the attorney for the petitioner of his representation of Ms. Oslund, as a substantial compliance with the required filing with the clerk of a written notice of appearance and written notice to the attorney for the petitioner. Together these acts are considered an appearance by attorney Gualtieri. No stipulation of substitution of attorneys having been filed and no order authorizing the withdrawal of attorney Gualtieri, the written notice of appearance by attorney D’Addario filed on November 20, 1974 is viewed as unauthorized and treated as a nullity. If the appearance of attorney Gualtieri was unauthorized by Glenita Oslund it is, nevertheless, binding upon her and she is left to her remedy against such attorney. (Petker v Rudolph, 168 Misc 909, affd 258 App Div 1040.) The affidavit submitted on her behalf by such counsel was considered by the court for the reason noted and for the further reason that the rights and interests of a client should not be jeopardized by the action or inaction of her attorney, if it can be avoided. The court holds Glenita Oslund to have appeared in the proceeding herein, first in person and subsequently by counsel, and that she is bound by the decision rendered herein.
The executor shall proceed with the administration of the estate in accordance with the determinations which have been made herein.